In the Matter of the Application of JULIUS DAVIDSON, Respondent, for a Peremptory Order of Mandamus against JAMES J. WALKER, Mayor of the City of New York, Appellant.

Second Department, January 13, 1928.

**Courts — Court of Special Sessions of City of New York — mandamus to compel mayor to appoint two justices, resident of Brooklyn — Inferior Criminal Courts Act (Laws of 1910, chap. 659), § 12, provides for five justices, resident of Brooklyn — mayor appointed two justices to Children's Court — Children's Court Act (Laws of 1924, chap. 254), § 6, relating to Children's , Court as separate court, did not repeal Inferior Criminal Courts Act, § 12, relating to number of resident justices — mayor will be compelled to make appointment.**

This is a proceeding to compel the mayor of the city of New York to appoint two justices to the Court of Special Sessions who are residents of the borough of Brooklyn. Section 12 of the Inferior Criminal Courts Act of the City of New York (Laws of 1910, chap. 659) provides for five justices, resident of Brooklyn. Section 6 of the Children's Court Act of the City of New York (Laws of 1924, chap. 254), constituting the Children's Court as a separate court, provides that if any of the justices of the Court of Special Sessions then sitting in the division of that court called the Children's Court shall be appointed as justices of the new Children's Court, " the office of justice of the Court of Special Sessions which he had previously held shall be deemed to be abolished." The mayor appointed two of the justices of the Court of Special Sessions, who were residents of Brooklyn, as justices of the Children's Court.

Section 6 of the Children's Court Act did not operate to repeal section 12 of the Inferior Criminal Courts Act, relating to the number of justices resident of Brooklyn, and, therefore, the mayor must appoint two justices of the Court of Special Sessions, resident of Brooklyn, so that there will be five justices resident of that borough sitting in the Court of Special Sessions.

To permit the mayor to reduce the number of justices required by section 12 of the Inferior Criminal Courts Act would amount to a delegation by the Legislature to the mayor of power to repeal legislation. Such a delegation is not authorized.

APPEAL by the defendant from an order of the Supreme Court, entered in the office of the clerk of the county of Kings on the 8th day of June, 1927, as resettled by an order entered in said clerk's office on the 15th day of June, 1927.

*J. Joseph Lilly* [*George P. Nicholson, Corporation Counsel, Russell Lord Tarbox* and *Arthur Sweeny* with him on the brief], for the appellant.

*John B. Johnston* [*Ralph K. Jacobs* with him on the brief], for the respondent.

*Leonard M. Wallstein* [*Ralph M. Frink* with him on the brief], *amicus curiæ.*

RICH, J.   This is a proceeding brought to require the defendant, the mayor of the city of New York, to appoint two qualified persons, residents of the borough of Brooklyn, as justices of the Court of Special Sessions for the City of New York.   It is based upon the fact that at the present time but *three* associate justices of the Court of Special Sessions are resident in the borough of Brooklyn, whereas section 12 of the Inferior Criminal Courts Act of the City of New York (Laws of 1910, chap. 659) provided, among other things: "Appointments of associate justices shall always be so apportioned among the several boroughs that at no time shall there be less than seven associate justices resident in the borough of Manhattan or The Bronx; *five* associate justices resident in the borough of Brooklyn, and *one* associate justice resident in each of the boroughs of Queens and Richmond, respectively."   The Court of Special Sessions consisted of a chief justice and fourteen associate justices (Id. § 11), *seven* residing in Manhattan or The Bronx, *five* in Brooklyn, *one* in Queens and *one* in Richmond.   Three additional justices resident in Manhattan were thereafter appointed, pursuant to the provisions of section 16 of the act, making *ten* residing in Manhattan and The Bronx, *five* in Brooklyn, *one* in Queens and *one* in Richmond.   The mayor, on September 15, 1924, pursuant to section 6 of the Children's Court Act of the City of New York (Laws of 1924, chap. 254), constituting the Children's Court as a separate court, appointed *five* Special Sessions justices as justices of the newly constituted Children's Court, *three* of whom were residents of Manhattan and *two* of whom were residents of Brooklyn.   That section, among other things, provided that, if any of the justices of Special Sessions then sitting in the division of that court called the " Children's Court " should be appointed as justices of the newly constituted and separate " Children's Court," " the office of justice of the Court of Special Sessions which he had previously held shall be deemed to be abolished."   (See, also, Laws of 1925, chap. 596, and Laws of 1927, chap. 359, amdg. said § 6.)   These appointments of Special Sessions justices as justices of the newly constituted Children's Court reduced the number of associate justices of Special Sessions to *six* residing in Manhattan, *one* residing in The Bronx,

*three* residing in Brooklyn, *one* residing in Queens, and *one* in Richmond. In order to restore the ratio provided by section 12 of chapter 659 of the Laws of 1910, it is claimed that the mayor should be required to appoint two additional justices from the borough of Brooklyn, while it is asserted on behalf of the mayor that these offices were abolished by the express provisions of section 6 of chapter 254 of the Laws of 1924, which, not expressly but by implication, repealed section 12 of chapter 659 of the Laws of 1910.

The question presented for determination is whether it was the intention of the Legislature, in the act creating the new Children's Court, to delegate to the mayor the power, by appointing Special Sessions justices to the newly constituted Children's Court, to thereby abolish their offices as justices of Special Sessions and to *reduce* the number of associate justices of the Court of Special Sessions from *fourteen* (as provided by Laws of 1910, chap. 659, § 11) to *twelve* and to reduce the number in Brooklyn from *five* (as provided in Laws of 1910, chap. 659, § 12) to *three.* The learned Special Term has decided that section 12 of chapter 659 of the Laws of 1910 has not been repealed by implication (Laws of 1924, chap. 254, § 6): *First,* because the two statutes are not repugnant in that they constitute and relate to two entirely separate and distinct courts, and *secondly,* because, while numerous sections of the former act were expressly *repealed,* sections 11 and 12 were not included. (See Laws of 1924, chap. 254, § 68.)

I think that if the Legislature had intended to reduce the *minimum* number of justices of the Court of Special Sessions from *fourteen* to *twelve*, it would have so provided, and if it had intended to repeal section 11 or section 12 of chapter 659 of the Laws of 1910, it would have included those sections among those *expressly* repealed. Besides, although the point is not raised, we are of the opinion that to permit the mayor to reduce the number of justices required by section 11 and by section 12 of chapter 659 of the Laws of 1910, was a delegation of power of legislation that is unauthorized and may not be sustained. The Legislature may not delegate the power to enact a statute, and, conversely, may not delegate the power to *repeal* it. While direct authority for this proposition may be lacking for the reason that it is academic, because the power to enact necessarily implies the power to repeal, there is some authority in other jurisdictions in support of it. (*State ex rel. Crumpton* v. *Montgomery,* 177 Ala. 212, 239; *Cincinnati, W. & Z. R. R. Co.* v. *Comrs. Clinton County,* 1 Ohio St. 77, 88; *St. Louis Merchants' Bridge T. R. Co.* v. *United States,* 188 Fed. 191, 195; *Corning* v. *Greene,* 23 Barb. 33, 50, 51.) While it may be said that the Legisla-

ture has prescribed the condition upon which the office shall be abolished, still the act delegates to the mayor the performance of that condition, and this, as I have said, is objectionable.

It follows that the order should be affirmed, without costs.

LAZANSKY, P. J., KAPPER, SEEGER and CARSWELL, JJ., concur.

Peremptory mandamus order affirmed, without costs.