In the Matter of SANTIAGO DURANT, Appellant, *v.* MOTOR VEHICLE ACCIDENT INDEMNIFICATION CORPORATION, Respondent.

Second Department, January 20, 1964.

*Seymour H. Metnick* for appellant.

*Watters & Donovan* (*Patrick J. Hughes* of counsel), for respondent.

HOPKINS, J.   On September 4, 1959 the petitioner was injured as the result of a collision between a motor scooter on which he was a passenger and an uninsured automobile.   The motor scooter was owned and operated by his employer who was insured under a liability policy containing an automobile accident indemnification endorsement issued by the Motor Vehicle Accident Indemnification Corporation (MVAIC).

That endorsement, in part, reads as follows:

" The company, on behalf of the Motor Vehicle Accident Indemnification Corporation, hereinafter called ' MVAIC ', agrees with the named insured, in consideration of the payment of the premium for this endorsement and subject to all terms of this endorsement:   *   *   *

" 5. Limits of Liability:

" (a) The limit of liability of MVAIC for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident is $10,000, and subject to the above provision, the total limit of liability of MVAIC for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons, whether insureds or qualified persons under the New York Motor Vehicle Accident Indemnification Corporation law, as the result of any one accident is $20,000.   The application of more than one New York Automobile Accident Indemnification endorsement to any accident shall not operate to increase the limit of liability of MVAIC with respect to any and all persons sustaining bodily injury as a result of such accident.

" (b) Any amount payable under the terms of this endorsement   *   *   *   shall be reduced by (1) all sums paid to one or more insureds on account of such bodily injury by or on behalf of (a) the owner or operator of the uninsured automobile and (b) any other person or persons jointly or severally liable together with such owner or operator for such bodily injury, (2) all sums paid to one or more insureds on account of such bodily injury under any insurance similar to that provided by this endorsement and (3) the amount paid and the present value of all amounts payable on account of such bodily injury under

any workmen's compensation law, exclusive of non-occupational disability benefits.

" 6. Arbitration: If any person making claim hereunder and MVAIC do not agree that such person is legally entitled to recover damages * * * or do not agree as to the amount of payment which may be owing under this endorsement, then, upon written demand of either, the matter or matters upon which such person and MVAIC do not agree shall be settled by arbitration * * * and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and MVAIC each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this endorsement."

The petitioner has received the sum of $6,710.95 in workmen's compensation benefits. In February, 1962, the petitioner served on MVAIC a demand for arbitration, claiming the sum of $20,000. At the arbitration hearing in September, 1962, MVAIC, pursuant to prior written notice, moved to dismiss the claim or to reduce it to the sum provided by the endorsement. In October, 1962, the arbitrator rendered an award in the sum of $10,000 in favor of the petitioner,[1] finding that it was not the intent of the Legislature that the MVAIC, by the imposition of a condition in the endorsement, should have the power to reduce the amount of the award to the extent of the workmen's compensation benefits.

The petitioner moved to confirm the award. MVAIC opposed the motion and sought to modify the award on the ground that the arbitrator had exceeded his powers under the endorsement. Special Term denied petitioner's motion and granted MVAIC's motion to modify the award, holding that the endorsement limited the amount of the award to the difference between $10,000 and the sums obtained by the petitioner from workmen's compensation or to the net amount of $3,289.05. On reargument Special Term adhered to its decision.

The primary issue before us is whether the endorsement may be so enforced as to require the award made under arbitration to be reduced by the amount of workmen's compensation received by the petitioner.

As a creature of the Legislature, MVAIC manifests the continuing concern of the State for the protection of injured victims of an automobile accident (cf. Ætna Cas. & Sur. Co. v. O'Connor,

---

1. The arbitrator found that the petitioner's damages were in excess of the sum of $18,000, so that he was entitled to the maximum of $10,000 prescribed by the endorsement and the statute (Insurance Law, § 167, subd. 2-a).

8 N Y 2d 359, 364). Hence, MVAIC derives its rights and liabilities from the statute giving it corporate life (Insurance Law, art. 17-A).[2]

The avowed purpose of the statute is to close the gaps in the Motor Vehicle Financial Security Act (Vehicle and Traffic Law, art. 6), and to provide the same recompense to a person injured by an uninsured motorist as he would obtain if he had been injured by an insured motorist (*McCarthy* v. *MVAIC*, 16 A D 2d 35, 38, affd. 12 N Y 2d 922).

The statute identifies two classes of beneficiaries: (1) the qualified person and (2) the insured person (Insurance Law, § 601). The qualified person is one not covered by a liability insurance policy and without rights under the MVAIC endorsement; the insured person is one covered by a liability insurance policy, and therefore pursues his rights under the endorsement, which is prescribed by MVAIC subject to the approval of the Superintendent of Insurance (Insurance Law, § 606, subd. [b]).

A qualified person is relegated to an action against the uninsured motorist, and, after obtaining a judgment which remains unsatisfied, seeks payment from MVAIC through filing a verified petition in the court in which the judgment was entered (Insurance Law, § 610). The payment may not exceed $10,000 where only one person was injured in an accident. The statute reduces the payment, however, to a qualified person by the amount " (a) of any other valid and collectible liability insurance afforded to, and the available assets or contribution of, the financially irresponsible motorist, and (b) of any settlement or payment received by the qualified person from, or on behalf of, any person or persons jointly or severally liable, together with the financially irrepsonsible motorist " (Insurance Law, § 610).

The insured person, on the other hand, under the terms of the MVAIC endorsement quoted above, is bound to the remedy of an arbitration proceeding, and the equivalent maximum sum of $10,000 stipulated for his benefit is reduced not only by the payments described above as applicable to a qualified person under the provisions of section 610 of the Insurance Law, but also by workmen's compensation benefits.

The petitioner, as an insured person, has been accordingly placed in a disadvantageous position vis-a-vis a qualified person. MVAIC argues that the disadvantage flows inevitably and rightfully from the language of the endorsement defining the

2. The nature of MVAIC as a nonprofit corporation, and its rights and duties, are discussed in 29 Brooklyn L. Rev. 286, and 29 N. Y. Jur., Insurance, §§ 267–269, pp. 256–258; 30 N. Y. Jur., Insurance, §§ 1242–1259, pp. 682–710.

limits of the petitioner's recovery. We find the language of the endorsement clear in its direction that the damages be reduced by the amount of workmen's compensation, but we do not think that the endorsement may be so enforced against the petitioner.

To accept the view advanced by MVAIC results in the disquieting and inconsistent conclusion that two equally innocent victims of uninsured motorists collect disparate recoveries, merely because of the use in the statute of an identifying epithet. We do not believe that the Legislature intended such a result.

There is no evidence in the statute or the underlying legislative history preceding its enactment that a distinction of this character was ever contemplated (cf. N. Y. Legis. Annual, 1958, pp. 244, 299, 436, 473). Indeed, the distinction arises not because of the statute, but out of the exercise of the power delegated to MVAIC to draw the endorsement (Insurance Law, § 167, subd. 2-a; § 606, subd. [b]) — an act presumed to have been done with its own interests in view (*Matthews* v. *American Cent. Ins. Co.*, 154 N. Y. 449, 456). That power, in the words of the Insurance Law (§ 606, subd. [b]), is strictly limited as follows: " To prescribe, subject to the approval of the superintendent [of insurance], the policy or endorsement *form* to be issued by the members *embodying the coverage required by section one hundred sixty-seven, subsection two-a* " (emphasis supplied). Subdivision 2-a of section 167 of the Insurance Law does no more than state that no policy insuring against loss resulting from liability arising out of the ownership and use of a motor vehicle shall be issued, unless it contains an endorsement embodying the limits of payment by MVAIC of $10,000 for the injury or death of one person in any one accident, and $20,000 for the injury or death of more than one person under the circumstances of an accident involving an uninsured motorist or unidentified motor vehicle, " subject to the terms and conditions set forth [in such policy] to be prescribed by the board of directors " of MVAIC and approved by the Superintendent of Insurance.

The power delegated to MVAIC by these provisions is thus confined to the drafting of an endorsement which carries out the spirit and intent of the statute. That power cannot be enlarged unilaterally by MVAIC arrogating to itself the prerogative to debase the insured person's right of recovery in contrast to the same right granted to a qualified person. Any such enlargement would frustrate the uniformity of treatment of injured persons intended by the Legislature and would perpetrate an inequity through the guise of protection in an endorsement made a part of the insurance policy covering the injured

party. If workmen's compensation were to be the subject of a deduction from the recovery, specific authority should have been provided in the statute (cf. Cal. Insurance Code, § 11580.2, subd. [g], par. [1]; N.J.S.A., 39:6–70, subd. [a]; 39:6–83). The endorsement is not a private contract, fully negotiated by carrier and insured; a supervening public interest modifies its terms in keeping with public policy (*Teeter* v. *Allstate Ins. Co.*, 9 A D 2d 176, affd. 9 N Y 2d 655). Indeed, the insured person in this case was not even a party to the policy.

Moreover, the endorsement, if so enforced as to require the deduction of workmen's compensation benefits from the recovery of an insured person, thwarts the statutory scheme by which those benefits were produced. The agency which is the source of the benefits paid as workmen's compensation is entitled to a lien in that amount on the proceeds obtained through a third-party action commenced by the injured workman or his representatives, and, if a third-party action is not commenced within the specified time, an assignment of the third-party action to such agency results as matter of law (Workmen's Compensation Law, § 29). The MVAIC endorsement removes these direct and substantial rights by deducting from the recovery of an insured person the very amount to which the lien would attach and the very amount which would pass by assignment if a third-party action were not brought.[3] Such a sweeping and intrusive effect on a statutory plan of long standing should not be construed to lie within the authority of the board of directors of a corporation (MVAIC), albeit it may be quasi-public in character and administering a statutory function.

Generally, the powers of an administrative agency may not be implied, but are created by language of clear import, admitting of no other reasonable construction (*City of New York* v. *Maltbie*, 274 N. Y. 90, 98; *City of New York* v. *Interborough R. T. Co.*, 257 N. Y. 20, 38; 1 N. Y. Jur., Administrative Law, § 32, pp. 342–343). Unless the delegation of power to vary or amend statutory provisions is explicitly conferred by the Legislature on an administrative board or official, the exercise of the power is ineffective (*Pollard* v. *Trivia Bldg. Corp.*, 291 N. Y. 19, 23; *Gerber* v. *Seaich Realty Co.*, 259 App. Div. 667, 669; cf.

---

3. The endorsement has still a further prejudicial effect in its relation to the proceeds received in a third-party action under the Workmen's Compensation Law (§ 29, subd. 1). That section provides that the lien held by the agency which is the source of payment is collectible from the recovery *after* deduction of attorney's fees and disbursements incurred in the action. The self-protective language drafted by MVAIC gives no credit for such fees and disbursements, but reduces the award by the full amount of workmen's compensation.

3 Sutherland, Statutes and Statutory Construction [3d ed.], § 6603, pp. 268–272).[4]

We think that in this setting the usual rule governing the construction of policies issued by insurers to supply conformity with statutory requirements must be observed. As the endorsement was attached to the policy as the result of a legislative command, the statutory text is read into it, and the text controls over conflicting provisions of the policy (*Cooper* v. *Commercial Ins. Co.*, 14 A D 2d 55, affd. 11 N Y 2d 818; cf. Patterson, " Compulsory Contracts in the Crystal Ball ", 43 Col. L. Rev. 731, 735, 736).

The approval by the Superintendent of Insurance does not, we think, render the endorsement invulnerable. First, it must be noted that he has not expressly approved the endorsement, but has merely referred to it generally in his regulations (11 NYCRR 60.4, 60.5). But assuming that the endorsement has received his express approval, as perhaps we must (*Equitable Life Assur. Soc.* v. *Volk*, 256 App. Div. 348), nevertheless the endorsement cannot be enforced if it runs counter to the legislative intent or if it violates existing law (*Franklin* v. *John Hancock Mut. Life Ins. Co.*, 298 N. Y. 81; *Kocak* v. *Metropolitan Life Ins. Co.*, 144 Misc. 422, affd. 237 App. Div. 780, affd. 263 N. Y. 518). To put it differently, the approval of the Superintendent cannot breathe life into a provision stillborn.

The respondent urges that the elimination of the deduction of workmen's compensation benefits from the amount awarded will necessarily mean a double recovery for the petitioner. This claim is specious. There cannot be a double recovery, unless the same damages are collected twice (cf. *Matter of Meachem* v. *New York Cent. R. R. Co.*, 8 N Y 2d 293, 298). The petitioner's recovery is subject to the lien of his employer for reimbursement of the sum of the workmen's compensation benefits received. Moreover, on the facts of the case, the petitioner has not yet obtained his total damages, found by the arbitrator to be $18,000. The $10,000 maximum payable by MVAIC, added to the $6,710.95 of workmen's compensation, falls short of the amount considered by the arbitrator to constitute the damages sustained by the petitioner.

---

4. If we construed the statute to grant the power to alter any other statute, the grant might well be unconstituional (cf. *Panama Refining Co.* v. *Ryan*, 293 U. S. 388, 428–430; *Matter of Davidson* v. *Walker*, 222 App. Div. 437, revd. on other grounds 248 N. Y. 357; 44 C. J. S., Insurance, § 57, subd. b; 1 Am. Jur. 2d, Administrative Law, § 104). The statute should be so construed as to avoid invalidity (cf. *Matter of Coates*, 9 N Y 2d 242; *United States* v. *Jin Fuey Moy*, 241 U. S. 394; *Machinists* v. *Street*, 367 U. S. 740).

Since the endorsement relating to the deduction of workmen's compensation cannot be enforced, we read the endorsement as if the deduction did not exist (Insurance Law, § 143, subd. 1; cf. *Keystone Mut. Cas. Co.* v. *Hinds,* 180 Md. 676, 680–681).

Interest on the award should run from October 30, 1962, the date of the arbitrator's award (CPLR 5002, formerly Civ. Prac. Act, § 480; *Matter of East India Trading Co.,* 280 App. Div. 420, affd. 305 N. Y. 866).

Accordingly, the order of February 20, 1963 should be reversed on the law, with costs; the petitioner's motion to confirm the arbitrator's award should be granted and judgment directed to be entered in petitioner's favor for the full amount of such award, with interest thereon from October 30, 1962; and respondent's motion to reduce the award should be denied. No questions of fact were considered.

The appeal from the original order of January 2, 1963 should be dismissed as academic.

UGHETTA, Acting P. J. (dissenting). I dissent from the reversal of the order of February 20, 1963, and vote to affirm such order.

Upon an automobile liability insurance policy carried by one Sterlini as named insured, there is an endorsement covering his employee, the petitioner here, as an additional insured. The endorsement is made by the insurer on behalf of the MVAIC. In this standard MVAIC endorsement it is provided that the limit of liability to the petitioner for injuries sustained by him by reason of negligence of an uninsured motorist is $10,000 less "the amount paid * * * on account of such bodily injury under any workmen's compensation law". The endorsement contains a clause for binding arbitration in event of disagreement between claimant and MVAIC as to (1) liability of uninsured motorist or (2) amount of payment owing "under this endorsement."

Petitioner invoked the arbitration clause. The arbitrator found that the uninsured motorist was at fault and that damages for personal injuries were in excess of the $10,000 maximum. These were the only factors subject to arbitration. The amount owing under the endorsement, as so determined by the arbitrator, was $10,000, less the compensation award of $6,710.95. But then the arbitrator rewrote the endorsement (which had created him and defined the scope of his power) by striking out the provision requiring deduction of compensation award. The issue as to the compensation award was never before him and he was unauthorized to resolve it; that was a matter for the courts in an

appropriate action or proceeding (*Matter of Rosenbaum* [*American Sur. Co. of N. Y.*], 11 N Y 2d 310).

It well may be judicially determined that the blanket authority afforded MVAIC as to terms and conditions, as approved by the Superintendent of Insurance (Insurance Law, § 167, subd. 2-a), includes power to deduct the compensation award where an employer, by reason of the employer-employee relationship and irrespective of the lack of negligence by the employer, has paid for workmen's compensation and for duplicate motor vehicle insurance (*Red Hook Cold Stor. Co.* v. *Department of Labor*, 295 N. Y. 1, 9).

KLEINFELD, HILL and RABIN, JJ., concur with HOPKINS, J.; UGHETTA, Acting P. J., concurs in the dismissal of the appeal from the order of January 2, 1963, but dissents from the reversal of the order of February 20, 1963 made on reargument, and votes to affirm such order, with opinion.

Order of February 20, 1963 reversed on the law, with costs; motion by petitioner to confirm the arbitrator's award granted and judgment directed to be entered in petitioner's favor for the full amount of such award, with interest thereon from October 30, 1962, the date of the award; and respondent's motion to reduce the award denied. No questions of fact were considered.

Appeal from the original order of January 2, 1963 dismissed as academic.