**Elizabeth BURKE, Plaintiff,**

v.

**FIRST UNUM LIFE INS.
CO., Defendant.**

**No. 97 Civ. 1406(LAK).**

United States District Court,
S.D. New York.

Aug. 26, 1997.

**MEMORANDUM OPINION**

KAPLAN, District Judge.

Misstatements and omissions in insurance applications are a frequent source of controversy. Insurance carriers often and understandably seek to avoid liability on policies which they would not have underwritten, or for which they would have charged more, had the applications fully and accurately disclosed all of the material facts. But the equities in such cases do not invariably lie only with the insurance carriers. Inaccuracies and omissions often are the product of misunderstanding and faulty recollection rather than fraud. Whatever their source, the consequences of the loss of insurance coverage may be extremely serious and may be felt by blameless dependents and beneficiaries.

The State of New York has sought to strike a balance between the interests of carriers and policy holders in these circumstances. It requires insurance carriers to include in disability policies either (a) prescribed statutory language that permits use only of *fraudulent* misstatements to void a policy or deny benefits once the policy has been in effect for two years, or (b) language at least as favorable to the insured. Thus, the carrier may seek to avoid the contract on the ground of *any* misrepresentation within two years from its issuance but thereafter may do so only if it proves deliberate fraud.

The question presented by this motion is whether a policy that permits the carrier to seek to void the coverage *at any time* as long as it has notified the insured by letter that it "contest[s] ... the validity of coverage ..." within two years of the issuance of the policy complies with the statute. This Court holds that it does not.

*Facts*

Plaintiff moves to strike the insurer's first defense and dismiss its first counterclaim. The allegations of those pleadings therefore are accepted as true for purposes of the motion. In addition, the Court considers the full text of the insurance policy, plaintiff's policy application, and the insurer's letter, dated January 4, 1995, all of which are referred to and/or quoted extensively by the

Mark Scherzer, New York City, for Plaintiff.

Louis M. Lagalante, Lane & Mittendorf, New York City, for Defendant.

insurer in its answer.[1] Finally, the Court has considered defendant's evidence bearing on the approval of its policy form by the New York Superintendent of Insurance. The motion therefore is treated as one for partial summary judgment.[2]

On November 19, 1993, plaintiff Elizabeth Burke signed a written application to defendant First UNUM Life Insurance Co. ("UNUM") for disability insurance. Shortly thereafter, UNUM issued the policy. (Ans.¶ 2) The policy contained the following provision relevant here:

> "**Time Limit on Certain Defenses.** Except for fraudulent misstatements, we will not contest those statements made by you in the application for coverage provided under the policy after that coverage has been in effect for two years during your lifetime.

> \*      \*      \*      \*      \*      \*

> "Contest means that we question the validity of coverage under this policy by letter to you. This contest is effective on the date we mail the letter and refund the premium to you." (Ans.¶ 21)

The policy further provided:

> "**Conformity with State Statutes.** If any provision of this policy conflicts with the statutes of the state where you reside on the effective date of that provision, it is amended to conform with the minimum requirements of those statutes." (Scherzer Aff. Ex. D, at 11)

The plaintiff allegedly became totally disabled within the meaning of the policy on or about December 14, 1993. (Cpt ¶ 9) She thereafter filed a claim for benefits. (Id. ¶ 10) On January 4, 1995, however, UNUM took the position, in a letter to plaintiff, that certain statements in her application concerning her medical history were false and that the undisclosed information was material to its issuance of the policy. It tendered a check purportedly representing a full refund of all premiums paid from inception, plus interest. It further stated:

> "We hereby contest the validity of your policy and have decided to rescind it. The effect of a rescission is to restore both parties to the status quo before the policy was issued. You would be entitled to a refund of premiums paid from November 18, 1993. First UNUM would be entitled to the return of policy number LND265451 and it would become null and void from its inception. We have enclosed a check which represents a full refund of all premiums paid plus interest for this policy since November 18, 1993.

> "The return of policy number LND265451 will constitute acceptance of the rescission of this policy. We ask that you return the void policy in the enclosed return envelope. If you dispute the accuracy of the information on which our action is based or otherwise are unwilling to accept the rescission by mutual consent, do not return the policy and DO NOT CASH THE CHECK." (Scherzer Aff. Ex. E. at 2: see also Ans. ¶¶ 22–23)

It is common ground that plaintiff did not acquiesce in UNUM's attempted rescission. Nevertheless, nothing material occurred until plaintiff commenced this action in 1997, more than three years after the issuance of the policy. The defendant answered, raising the defense that the policy was void in consequence of the alleged misstatements in the application. Jurisdiction is based on diversity of citizenship.[3]

---

1. *See, e.g., Harsco Corp. v. Segui*, 91 F.3d 337, 341 n. 1 (2d Cir.1996) (permitting consideration of letter cited and described in complaint); *San Leandro Emer. Med. Plan v. Philip Morris Cos.*, 75 F.3d 801, 808–09 (2d Cir.1996) (permitting consideration of documents "integral" to the nonmovant's pleading as incorporated by reference and properly considered on motion to dismiss); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir.1991) (same); *Cortec Indus. Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir.1991), cert. denied, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992).

2. Fed R.Civ P. 12(b).

3. Defendant correctly points out that the allegation of plaintiffs citizenship in the complaint is technically defective in that it alleges only that plaintiff is a "resident" of Georgia, rather than a "citizen" as required by 28 U.S.C. § 1332. *See, e.g., DeVries v. Starr*, 393 F.2d 9. 11 (10th Cir. 1968). The allegation of the citizenship of the defendant also is defective, as plaintiff alleges only that UNUM has its principal place of business, and that it is authorized to engage in business, in New York without alleging the state of its

*Discussion*

The crux of the dispute in this case is whether UNUM may avoid plaintiff's policy simply by showing that there were material misstatements or omissions in her application or whether it must prove fraud as well. If the language of the policy's incontestability clause alone controls, UNUM is entitled to rely on innocent inaccuracies because its January 4, 1995 letter was received within two years after the date of issue and "contested" the policy within the meaning of the contractual definition of that term. Plaintiff, however, contends that New York law[4] required that the policy contain a prescribed provision, or an alternative chosen by the insurer which was at least as favorable to the insured, foreclosing reliance on innocent misrepresentations absent the institution of litigation by the carrier within the two year period. If New York law so required, she argues, the policy's Conformity with State Statutes clause incorporated that New York law.

■ The pertinent statute is Section 3216(d) of the New York Insurance Law, which in substance requires that health and disability policies contain a clause rendering the policy incontestable, except for fraud,[5] after two years. It states in relevant part:

"Each policy of accident and health insurance delivered or issued for delivery to any person in this state shall contain the provisions specified herein in the words in which the same appear in this subsection, except that the insurer may, at its option, substitute for one or more of such provisions corresponding provisions of different wording approved by the superintendent [of insurance] which are not less favorable to the insured or the beneficiary. . . .

"(1) Each policy shall, except with respect to designation by numbers or letters

as used below, contain the following provisions:

\* \* \* \* \* \*

"(B) TIME LIMIT ON CERTAIN DEFENSES:

"(i) After two years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such two year period.

\* \* \* \* \* \*

"(A policy which the insured has the right to continue in force subject to its terms by the timely payment of premium until at least age fifty or, in the case of a policy issued after age forty-four, for at least five years from its date of issue, may contain in lieu of the foregoing the following provision (from which the clause in parentheses may be omitted at the insurer's option) under the caption 'INCONTESTABLE':

"After this policy has been in force for a period of two years during the lifetime of the insured (excluding any period during which the insured is disabled), it shall become incontestable as to the statements contained in the application.)" N.Y. INS. L. § 3216(d) (McKinney 1985).

In this case, the insurer did not use the statutory policy language. Nevertheless. the statutory policy language is the necessary starting point because the sufficiency of the language used by the defendant depends upon whether it is at least as "favorable to the insured." as the statutory language. The question therefore is whether—assuming the policy contained the statutory language rather than the carrier's attempt to improve upon

incorporation. *See, e.g., Indiana Hi–Rail Corp. v. Decatur Junction Ry. Co.,* 37 F.3d 363. 365 n. 3 (7th Cir.1994) (allegation of state of incorporation insufficient absent allegation of state of principal place of business). Amendments to cure defective jurisdictional allegations are appropriate at any stage, however. 28 U.S.C. § 1653. Accordingly, plaintiff is hereby granted leave to amend the complaint in order properly to allege the citizenship of the parties.

4. The parties agree that this case is governed by New York law, as the plaintiff was a resident of, and the policy was issued and delivered to her in, New York.

5. Fraud for these purposes requires an intention to defraud the insurer. *Greenhaus v. Am. Prog. Health Ins. Co.,* 33 Misc.2d 280, 281, 225 N.Y.S.2d 590, 592 (Sup.Ct. Nassau Co.1962), *aff'd* 18 A.D.2d 1076, 239 N.Y.S.2d 406 (2d Dept. 1963).

it—the insurer's defense of innocent misrepresentation, asserted in this action more than three years after the issuance of the policy, would be sufficient.

Section 3216(d), which is the lineal descendent of a 1939 provision,[6] does not exist in a vacuum. It was enacted a few years after the New York Court of Appeals' landmark decision on incontestability clauses, *Killian v. Metropolitan Life Insurance Co.,* 251 N.Y. 44, 166 N.E. 798 (1929).

The life insurance policy in question in *Killian* provided that it would be incontestable after two years, except for nonpayment of premium. The policy did not define "contest." The insurer gave notice within the two year period that it denied liability on the ground of breach of warranty and fraud but, as here, no litigation was commenced until after the period expired. Writing for a unanimous Court of Appeals, Chief Judge Cardozo summarized the parties' positions: "For the defendant, the contention is that a definitive notice of rejection without more will make out a contest within the meaning of the policy." *Id.* at 47–48, 166 N.E. 798. "For the plaintiffs, the contention is that notice of rejection is unavailing unless followed within the prescribed time by a contest in a court." *Id.* at 48, 166 N.E. 798. After noting that the plaintiffs' view had been upheld by most of the decided cases and adverting also to the ambiguity of the policy, the court held for the plaintiffs:

> "Repudiation of a policy is notice that a contest will ensue if insured or beneficiary shall make attempt thereafter to enforce a claim of right. It is not a contest itself. Repudiation before maturity (the subject of the contract being a policy of insurance) is not even such a breach as will sustain a remedy at law for the recovery of damages [citation omitted], though it may be the occasion for a declaratory judgment or other remedy in equity. Repudiation after maturity is a step closer to resistance, but it is not resistance by course of law. From

the viewpoint of the law, a contest in its proper meaning is still the contestation of the Romans, or something close thereto. The word is redolent of association with witnesses and writs. \* \* \*

> "Repudiation is, indeed, an act too uncertain, one resting too often in biased recollection, to be accepted as the equivalent of ordered battle in the courts. The value of a clause declaring a policy incontestable lies to no slight degree in the definiteness of the protection accorded to the holder. The good that it promises is in part a state of mind. After the lapse of two years the insured is no longer to be harassed by the fear that the policy will be avoided by interested witnesses asserting in later days that there was a disclaimer long ago. After a like lapse the beneficiaries are no longer to be subjected to the risk of forfeiture through notices or warnings that may be hard to disprove when the insured is in his grave. Alike for insured and for beneficiaries, there is to be the peace of mind that is born of definiteness and certainty. The clause, in effect, if not in form, is a statute of limitations, established by convention, and like the statute directed to remedies in court ...

> "A contest, then, begins when the insurer avoids, or seeks to avoid, the obligation of the contract by action or defense. \* \* \* For present purposes it is enough to say that a contest begins when the contestants, satisfied no longer with minatory gestures, are at grips with each other in the arena of the fight. When the fight is a civil controversy, the arena is the court." *Id.* at 48–50, 166 N.E. 798.

*Killian* thus held, as a matter of the common law of New York, that an incontestability clause in an insurance policy, in the absence of any more specific policy provision, places the start of the contest on the date on which the carrier brings suit or interposes a defense to a suit by the policy holder.[7] Any

---

**6.** L.1939, c. 882, §§ 164, 164–a.

**7.** The rule adopted in *Killian* was that of a majority of states even earlier. *Killian* has been widely followed and reaffirmed since it was decided. *E.g., Am. Life Ins. Co. v. Stewart,* 300 U.S.

203, 212, 57 S.Ct. 377, 379, 81 L.Ed. 605 (1937); *Greenbaum v. Columbian Nat. Life Ins. Co. of Boston, Mass.,* 62 F.2d 56, 58 (2d Cir.1932); *Berkshire Life Ins. Co. v. Fernandez,* 71 N.Y.2d 874, 876, 527 N.Y.S.2d 751, 752, 522 N.E.2d 1049 (1988)..

previous notice by the insurer simply does not matter. Hence, when the Legislature enacted the predecessor of Section 3216(d)— a statute which prescribed language that, like the policy in *Killian,* did not define the action the carrier was obliged to take within the two year period in order to preserve the innocent misrepresentation defense—the logical conclusion is that it intended to embrace the *Killian* holding. In any case, *Killian* certainly is most persuasive evidence of how the New York Court of Appeals would construe the statute in the absence of clearer indications of legislative intent.

The fact that *Killian* involved a policy quite different from the one at bar in the sense that it did not define "contest," whereas this policy specifically provides that the carrier may "contest" validity by sending the insured a letter, does not warrant a different result. The difference at first blush seems important because the policy at issue in this case is not ambiguous, and the plaintiff therefore did not have precisely the same reliance interest as the plaintiff in *Killian.*[8] But this distinction in the positions of the plaintiffs in the two cases ultimately is insignificant as a matter of law.

The controlling question here is not the meaning of UNUM's policy, the issue on which plaintiff's reasonable expectations would be important. Only if her rights under the UNUM policy are at least as favorable to her as they would have been had the policy contained the statutory language is the policy language germane. Hence, the determinative inquiry is what the rights of this insured would have been if the policy at issue here contained the language set forth in Section 3216(d). That language, just as the language in the policy in *Killian is* ambiguous as to the nature of the event that must occur within the two year period in order that the carrier preserve the right to void the

policy for innocent misrepresentations. *Killian's* holding therefore is directly applicable. And it requires the conclusion that the statutory language would not permit an insurer to seek to void the policy on the basis of innocent misrepresentations unless it interposed its claim in litigation within the two year period.

This conclusion flows not only from the application of the *Killian* analysis to Section 3216(d), but from the policy of the statute as well. In enacting Section 3216(d) and its predecessors, "[i]t [was] the legislative objective to obtain for policy holders the benefit of incontestability clauses favorable to them."[9] The New York courts "have stringently enforced" incontestability clauses "because of the important purposes which [they are] intended to serve."[10] The same considerations that moved Chief Judge Cardozo to resolve the ambiguity in the policy at issue in *Killian* therefore suggest strongly that the ambiguity in the statutory policy language contained in Section 3216(d) be resolved in the same way.

■ Having concluded that the statutory policy language contained in Section 3216(d) permits a carrier to contest the validity of a policy on the basis of innocent misrepresentations in the application only if it presents its position in litigation within two years of the date of issuance, the resolution of this motion is straight forward. The carrier in this case did not use the statutory policy language. Its alternative language is permissible only if it was approved by the Superintendent of Insurance and is "not less favorable to the insured ..." While the first requirement was satisfied, the second is not. The insurer's language clearly is less favorable to the insured because it permits the insurer to preserve the innocent misrepresentation defense in circumstances in which

---

8. The difference is not as great as it might be in light of the fact that the carrier in *Killian* also gave notice of its challenge to the policy within the two year period. Thus, the only difference between the *Killian* plaintiff and the plaintiff here is that the former did not know whether the carrier's notice was sufficient under the policy, whereas the latter knew that the notice was sufficient under this policy albeit not whether the policy complied with state law.

9. *Simpson v. Phoenix Mut. Life Ins. Co.,* 30 A.D.2d 265, 267, 291 N.Y.S.2d 532, 534 (1st Dept.1968), *aff'd,* 24 N.Y.2d 262, 299 N.Y.S.2d 835, 247 N.E.2d 655 (1969).

10. *Id.* 24 N.Y.2d at 266, 299 N.Y.S.2d at 839, 247 N.E.2d 655. *See also Fischer v. Mass. Cas. Ins. Co.,* 458 F.Supp. 939, 944 & n. 1 (S.D.N.Y.1978).

the statutory language would not do so. The Conformity with State Statutes clause of the policy therefore dictates that the policy be considered as if it contained the statutory language. This in turn leads to the conclusion that the insurer may defend this action only on the basis of any fraudulent misrepresentations.

■ UNUM resists this conclusion by asserting that the New York Superintendent of Insurance approved the policy form on which plaintiff's policy was written. This, it contends, implicitly reflected a finding by the Superintendent, entitled to deference, that its clause is "not less favorable to the insured" than the wording otherwise prescribed by Section 3216(d). The argument is unpersuasive.

■ Section 3201(b)(1) of the Insurance Law in effect at the time this policy was issued provided that "[n]o policy form shall be delivered or issued for delivery in this state unless it has been filed with and approved by the superintendent as conforming to the requirements of this chapter and not inconsistent with law." [11] While courts often defer to constructions of statutes by executive branch officials charged with their administration, the degree of deference warranted is related to the level of consideration given the specific question at issue. As the Appellate Division has held, the Superintendent's approval of a policy form without explicitly passing on the form's compliance with statutory requirements is entitled to little weight.[12] Here, there is nothing from which the Court may conclude that the Superintendent ever considered whether the language of UNUM's policy form complied with Section 3216(d) in the respect at issue here.[13]

In consequence, although the Superintendent approved the policy form, that approval is not enough to save the defendant. As the Second Department aptly put it, the policy "cannot be enforced if it runs counter to the legislative intent or if it violates existing law ... To put it differently, the approval of the Superintendent cannot breath life into a stillborn provision." [14]

■ UNUM next invokes nineteenth century concepts of freedom of contract. It contends that any failure to enforce the contract as written—despite the Court's holding as to the meaning of the New York Insurance Law in effect at the time the contract was concluded—would violate the Contract Clauses of the New York and United States Constitutions, its federal and state constitutional rights to due process of law, and its federal and state rights to equal protection of the laws, as well as constituting a taking of property without just compensation in violation of the New York Constitution. Apart from the state Contract Clause argument—to which UNUM devotes two sentences of its brief—all of these contentions are relegated to a single conclusory footnote. (Def. Mem. 7 n. 8)

The shortest of several answers to the Contract Clause argument is this: The policy to which the parties agreed contained not only UNUM's incontestability clause, but its Conformity with State Statutes clause as well. The later provides that the policy is deemed amended to conform to the requirements of state law. Thus, the policy—by mutual consent of the contracting parties—incorporates whatever state law requires as to the substance of the incontestability provision. There was no impairment of contract.[15]

---

11. N.Y. Ins. L. § 3201(b)(1) (McKinney 1985).

12. *See, e.g., Durant v. Motor Vehicle Acc. Indem. Corp.*, 20 A.D.2d 242, 248, 246 N.Y.S.2d 548, 554–55 (2d Dept.1964) (lack of express as opposed to implicit approval of policy form relevant in determining weight to be given Superintendent's view of conformity of policy to statutory requirements), *mod. on other grounds.* 15 N.Y.2d 408, 260 N.Y.S.2d 1, 207 N.E.2d 600 (1965).

13. UNUM has submitted copies of correspondence with the Insurance Department which

tends to show that the policy form here at issue was among approximately 20 forms submitted for approval in September 1990. They were approved on April 15, 1992 in a two sentence letter. (Finley Aff. Ex. B) They reflect no consideration whatever of whether the language in UNUM's incontestability clause conforms to the requirements of Section 3216(d)(1).

14. *Id.* 20 A.D.2d at 248, 246 N.Y.S.2d at 555.

15. UNUM's other constitutional arguments are so frivolous as not to warrant discussion.

For all of the foregoing reasons, this Court holds that Section 3216(d)(1) of the New York Insurance Law requires that accident and health insurance policies subject to the statute be incontestable on the basis of misstatements, except fraudulent misstatements, unless the insurer seeks to avoid the policy by action or defense asserted in a judicial proceeding within two years to the date of issue. In consequence, application of Section 3216(d) to this policy through its Conformity with State Statutes clause requires the conclusion that UNUM may contest the policy only on the basis of any fraudulent misstatements.

### Conclusion

Plaintiff's motion to strike defendant's first affirmative defense and to dismiss its first counterclaim, which has been converted into a motion for partial summary judgment, is granted in all respects.

SO ORDERED.