402 So.2d 175 (1981)
Phillip JACKSON
v.
CONTINENTAL CASUALTY COMPANY.
No. 14245.
Court of Appeal of Louisiana, First Circuit.
June 29, 1981.
Writ Granted September 18, 1981.
*176 Leo J. Berggreen, Baton Rouge, for plaintiff-appellant Phillip Jackson.
Paul H. Spaht, Baton Rouge, for defendant-appellee Continental Assur. Co.
Before COVINGTON, CHIASSON and LEAR, JJ.
COVINGTON, Judge.
Phillip Jackson, the plaintiff, has appealed the judgment of the trial court in favor of the defendant, Continental Assurance Company (referred to in plaintiff's petition as "Continental Casualty Company"), dismissing the plaintiff's demand for death benefits under a group insurance policy with Jackson's employer. We affirm.
*177 The relevant facts were stipulated by the parties and are not at issue on this appeal. The primary question before this Court is one of law, whether Beulah Jackson was the "legal spouse" of Phillip Jackson so as to make her eligible for coverage under the group life insurance policy in question.
The salient facts disclosed by the joint stipulation of facts are as follows: Phillip Jackson was a Louisiana State University employee prior to September 8, 1973, and all times material hereto, and was a participating member of the State of Louisiana Employees Uniform Group Benefits Program with premium deductions made directly from his paychecks. Life insurance in the group program was written by Valley Forge Life Insurance Company and its successor, Continental Assurance Company. On September 8, 1973, Jackson submitted an enrollment card for dependent life insurance, listing Beulah Jackson as his dependent spouse. Thereafter, deductions from his paychecks were made for these premiums. On July 9, 1979, Beulah Jackson died. When Jackson applied for death benefits, the insurer rejected his claim, denying any liability on the dependent coverage issue on the life of Beulah Jackson on the basis that she was not eligible for coverage because she did not qualify as a "dependent" under the policy, having never been lawfully married to Jackson. The insurer remitted all premiums paid by Jackson, but he has declined to accept them. Prior to her death, Beulah Jackson and Phillip Jackson, although "never legally married," lived together in a "common law marriage" relationship for some thirty-five years. During all this time, Beulah Jackson was "economically dependent" upon Jackson. According to the agreed facts, Jackson is illiterate. Continental did not learn that the Jacksons were not married until after Beulah Jackson had died.
The insurance policy in question contains the following provision concerning persons eligible under the policy:
"Section III ELIGIBILITY

"All employees of the Employer who qualify under Statement # 5 of the application, and their dependents, if any, as defined in this policy, are eligible to become insured hereunder.
"Present dependents of the employees shall become eligible on the date the employee becomes eligible. Newly acquired dependents shall become eligible on the date that they acquire dependent status as defined in this policy." (Emphasis added).
The subject policy defines "Dependents" as follows:
"Section VI DEPENDENTS
"The term `Dependent', as used in this policy, means any of the following persons who are enrolled for coverage hereunder as dependents, provided they are not also covered as an employee:
"1. The insured Employee's legal spouse residing with the employee.
"2. Any unmarried children fourteen (14) days of age and over but under nineteen (19) years of age residing with the employee and depending upon him for their support.
"3. Any unmarried children nineteen (19) years of age but under twenty-four (24) years of age who are enrolled as full-time students and who depend upon the employee for their support...." (Emphasis added).
In construing the insurance policy and the applicable statute, LSA-R.S. 22:175(B)(7),[1] the trial court concluded that an insured employee could insure his "legal *178 spouse," but that neither the statute nor insurance policy extended coverage to "partners of a common-law union."
Louisiana does not recognize the "common law marriage."[2] LSA-C.C. art. 88; Liberty Mutual Insurance Company v. Caesar, 345 So.2d 64 (La.App. 3 Cir. 1977), writ denied, 347 So.2d 1118 (La.1977). Hence, Beulah Jackson was not the "legal spouse" of Phillip Jackson. The lower court, following Harris v. Lumbermen's Mutual Casualty Co. of Chicago, 48 So.2d 728 (La.App. 1 Cir. 1950), held that a "spouse" means "one's wife or husband." We agree. Inasmuch as Beulah Jackson was never the "legal spouse" of Phillip Jackson, she was not eligible for coverage under the subject group life insurance policy.
The appellant further argues that the insurer's defense as to the ineligibility for coverage of Beulah Jackson is barred by the incontestability provision of LSA-R.S. 22:176(2), which reads:
"Incontestability: A provision that the validity of the policy shall not be contested, except for nonpayment of premiums, after it has been in force for two years from its date of issue; and that no statement made by an individual insured under the policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such individual's lifetime nor unless it is contained in a written instrument signed by him." (Emphasis added).
As can be seen, the incontestability provision states that the validity of the policy shall not be contested; it does not say that coverage shall not be contested.
The distinction between "validity" and "coverage" has been judicially recognized. In Allison v. Aetna Life Ins. Co., 158 So. 389 (La.App. 2 Cir. 1935), modified on rehearing, 161 So. 645 (La.App. 2 Cir. 1935), the Court stated:
"As we understand the law, this limitation of contestability applies to questions involving the validity of the policy and not those involving coverage. Metropolitan Life Ins. Co. v. Conway, 252 N.Y. 449, 169 N.E. 642". (Emphasis added).
This question was thoroughly reviewed in the case of Crawford v. Equitable Life Assurance Society of the United States, 56 III.2d 41, 305 N.E.2d 144 (1973), as follows:
"The courts of other States have considered a number of factual situations relating to eligibility, such as whether the insured is an employee at all, whether he was actively employed, whether he exceeded a specific maximum age, whether he was disqualified for some other reason, and whether he was incorrectly classified as to position. The decisions, which are collected in an annotation appearing in 26 A.L.R.3d 632, are not uniform in result.
"The proposition that an insurer may challenge the eligibility of the insured has been advanced, either by direct holding or otherwise, with regard to the states of Arkansas, Idaho, Louisiana, Michigan, New Hampshire, Pennsylvania, Texas and Wisconsin, the decisions in some instances having been rendered by a Federal court called upon to ascertain and apply the law of the State in question. See Gill v. General American Life Insurance Co. (8th Cir. 1970), 434 F.2d 1057; General American Life Insurance Co. v. Charleville (Mo.1971), 471 S.W.2d 231; Pond v. Idaho Mutual Benefit Ass'n (1959), 81 Idaho 38, 336 P.2d 314; Allison v. Aetna Life Insurance Co. (La.App.1935), 158 So. 389, modified, 161 So. 645; Rasmussen v. Equitable Life Assurance Society of the United States (1940), 293 Mich. 482, 292 N.W. 377; Fisher v. Prudential Insurance Co. (1966), 107 N.H. 101, 218 A.2d 62; First Pennsylvania Banking and Trust Co. v. United States Life Insurance Co.

*179 (3d Cir. 1969), 421 F.2d 959; Carp v. California-Western States Life Insurance Co. (5th Cir. 1958), 252 F.2d 337; Spitz v. Continental Casualty Co. (1968), 40 Wis.2d 439, 162 N.W.2d 1.
"The contrary view has been taken with respect to California, Oklahoma, Utah, and West Virginia. See John Hancock Mut. Life Ins. Co. v. Dorman (9th Cir. 1940), 108 F.2d 220; Baum v. Massachusetts Mutual Life Insurance Co. (Okl. 1960), 357 P.2d 960; Cragun v. Bankers Life Co. (1972), 28 Utah 2d 19, 497 P.2d 641; Morris v. Missouri State Life Insurance Co. (1933), 114 W.Va. 278, 171 S.E. 740; Poffenbarger v. New York Life Insurance Co. (S.D.W.Va.1967), 277 F.Supp. 726.
"The rule originally announced in Georgia was that eligibility could not be challenged (Equitable Life Assurance Society v. Florence (1933), 47 Ga.App. 711, 171 S.E. 317), but a subsequent Federal decision applying Georgia law looks the other way (Washington National Insurance Co. v. Burch (5th Cir. 1959), 270 F.2d 300). Conversely, the New York view, as first expressed in a Federal decision, was that the insurer might raise the defense of ineligibility (Fisher v. United States Life Insurance Co. (4th Cir. 1957), 249 F.2d 879), but a subsequent decision in 1969 by the New York Court of Appeals holds to the contrary (Simpson v. Phoenix Mutual Life Insurance Co. (1969), 24 N.Y.2d 262, 299 N.Y.S.2d 835, 247 N.E.2d 655). It is the Simpson decision on which the appellate court principally relied in the case now before us.
"We, however, consider that the question of eligibility is one which relates to the risk assumed and that a defense based on lack of eligibility is therefore not foreclosed by an incontestability clause.
"It is, of course, true that eligibility may relate to circumstances existing at the inception of the contract (although it may also arise subsequently because of a change in employment status). It is also true that it may have been determined initially upon the basis of statements made by the insured or by his employer. And it may be assumed that whether a person is an employee or is a full time employee is a matter affecting the willingness of the insurer to assume the defined risk at the defined premium charge, since employment or active or full-time employment may protect the insurer against adverse selection. See Gregg, Group Life Insurance (2d ed.) 34-36.
"A challenge to eligibility does not, however, involve an attack by the insurer on the validity of the master policy. The defendant is not seeking to set aside the policy because of the misrepresentations made and the only aspect of the insurance plan which is affected is the payment sought by a single beneficiary. Moreover, even as to that beneficiary, while the defendant may have relied on his representations as well as those of the decedent, the defendant's success in this litigation does not require that the defendant establish the falsity of those representations as such. Had the plaintiff alleged that the decedent had been a fulltime employee, instead of admitting that she was not, the defendant would of course have been put to his proof of ineligibility. But it would be the fact of eligibility or ineligibility which would be decisive, not what prior representations had been made on the subject.
"As we read Simpson, it represents a basic departure from the distinction announced in Conway between matters concerning validity, to which the incontestable clause applies, and the risk assumed, to which it does not. The court in Simpson takes the position that some matters which relate only to the risk assumed are nevertheless covered by the incontestable clause, namely those risks which could have been discovered at the time the contract was entered into. (See 24 N.Y.2d 262, 267, 299 N.Y.S.2d 835, 247 N.E.2d 655, 658). We consider that conclusion both inapplicable to the policy we consider here as well as unsuitable to the group insurance situation with its constantly changing body of insured employees.

*180 "The incontestability clause of the policy, to begin with, provides only that the validity of the policy may not be contested, and, as we have seen, its validity is not disputed."
We adopt the rationale of the Crawford case, and hold that in dealing with group insurance, the defense that the purported insured was never a member of an eligible class is not barred by the incontestability provision or clause. See also Home Life Insurance Company v. Regueira, 313 So.2d 438 (Fla.App. 2 Dist. 1975); Annot., 26 A.L. R.3d 632.
Garrell v. Good Citizens Mut. Ben. Ass'n, 204 La. 871,16 So.2d 463 (1943), cited by the appellant, is distinguishable from the case at bar. In Garrell, the Court was not addressing the issue of whether a particular person was eligible for coverage under the insurance policy. The issue considered by the Garrell Court concerned whether the incontestability clause precluded the questioning of the amount claimed by the beneficiary for death caused by tuberculosis. The policy contained a provision whereby the insurer would pay only one-fourth of the policy amount in the event that the insured died from tuberculosis. The Court, in reading this provision together with the incontestability clause, held that this limitation of coverage was applicable only for the first two years of the policy. Unlike the instant case, there was no question as to whether the person insured was actually eligible for coverage, and the insured did not attempt to insure as a dependent someone who was ineligible to be an insured under both the policy and a specific Louisiana statute. Therefore, Garrell, which involved the question of whether a certain risk is covered, is distinguishable from the instant case, which involved the issue of whether a certain person was eligible to be an insured.
Appellant next argues that Phillip Jackson could neither read nor write. That is only one of the factors to consider. It has been stipulated that the booklet entitled "State of Louisiana Employees Uniform Group Benefits Program" was given to Phillip Jackson. This booklet defines "Dependent", in relevant part, as: "The insured employee's legal spouse." Absent fraud, a person signing a written document is presumed to know its contents and may not avoid any of the obligations contained in the document by claiming he did not read or was unable to read the document. In Snett v. Union Sawmill Co., 159 La. 604, 105 So. 728 (1925), the Louisiana Supreme Court stated:
"If a party can read, it behooves him to examine an instrument before signing it; and if he cannot read, it behooves him to have the instrument read to him and listen attentively whilst this is being done."
There is no allegation of fraud, and the record reflects no fraud; therefore, this argument is without merit.
Finally, the estoppel argument raised by the appellant is also without merit. The trial court specifically rejected this argument, and we do too. It is well settled that estoppels are not favored in our courts. See e. g. Harvey v. Richard, 200 La. 97, 7 So.2d 674 (1942); Twillie v. H. B. Zachry Co., 380 So.2d 747 (La.App. 4 Cir. 1980); LeBlanc v. LeBlanc, 80 So.2d 715 (La.App. 1 Cir. 1955). Further, one of the fundamental elements of estoppel is that the person against whom it is urged knew of the facts relied upon. United Gas Pipeline Company v. Bellard, 286 So.2d 109 (La.App. 3 Cir. 1973). In the instant case it has been stipulated that: "Continental Assurance Company was not aware that Phillip Jackson and Beulah Jackson were not married until subsequent to the death of Beulah." Since the insurer did not have knowledge of the actual facts, the doctrine of estoppel is not applicable.
Therefore, for the above and foregoing reasons, the judgment of the District Court is affirmed. All costs of this appeal are to be paid by plaintiff-appellant.
AFFIRMED.
NOTES
[1] LSA-R.S. 22:175(B)(7) reads: 
"Insurance under any group life insurance policy except those policies issued pursuant to Paragraph (3) of Subsection A of this Section, may, if seventy-five percent of the then insured employees or members who have eligible dependents elect, be extended to insure the spouse and minor children of the insured in amounts in accordance with the plan which precludes individual selection by the employees or members or by the employer or trustee and which may not exceed fifty percent of the amount of insurance on the life of the insured employee. Children of an insured who are full time students and who are under the age of twenty-four may be included as eligible dependents."
[2] The status as concubine, in popular language," a common-law wife," arises when a man and woman live together in a permanent relationship as husband and wife, although without benefit of matrimony or a putative marriage. Henderson v. Travelers Insurance Co., 354 So.2d 1031, 1033 (La.1978).