428 So.2d 808 (1982)
CARTER'S INSURANCE AGENCY, INC.
v.
Arthur FRANKLIN, Sr., et ux.
No. 15057.
Court of Appeal of Louisiana, First Circuit.
October 12, 1982.
On Rehearing February 22, 1983.
*809 W. Hugh Sibley and Clifton T. Speed, Greensburg, for plaintiff-appellee.
Guy Huard and Don Juneau, Hammond, for defendants-appellants.
Before COVINGTON, LEAR and LANIER, JJ.
LANIER, Judge.
This is a suit by the guarantor on three promissory notes against the makers of the notes for indemnification for the amounts the guarantor was required to pay the holder. There was judgment in the trial court in favor of the guarantor and the makers took this devolutive appeal.[1]

I. FACTS
Carter's Insurance Agency, Inc. (hereinafter referred to as Carter's) sold various insurance policies to Arthur and Yvonne Franklin during the period of November, 1975 to March of 1980. The Franklins had an open account with Carter's during this period on which various amounts were paid from time to time and upon which they did not pay interest or service charges. During this period, the Franklins secured six loans from the Bank of Greensburg and one from *810 Premium Finance and used the money secured thereby to make some of the payments on the Carter's account.

A. THE NOTE OF DECEMBER, 1976
Prior to December 3, 1976, the Franklins had a balance due on their account with Carter's of $33.00. On December 3, 1976, the Franklins added coverage of a '71 Chevrolet pickup truck to an existing automobile policy at a cost of $145.00. On that same date, Arthur Franklin executed a promissory note in favor of the Bank of Greensburg (hereinafter referred to as Bank) for $242.97 with 8% per annum interest from maturity and payable in 7 equal monthly installments of $34.71 each commencing January 5, 1977. Carter's endorsed this note as a guarantor. The Truth in Lending disclosure statement executed in connection with this loan shows that the amount financed was $231.00, the finance charge was $11.97 and the annual percentage interest was 14.45%. Franklin paid the $231.00 to Carter's on that same day. This resulted in a credit balance on his account of $53.00. On February 7, 1977, the Bank called on Carter's to pay the January and February 1977 installments due on the December 1976 note plus a late charge of $1.74 for a total of $71.16. Carter's charged these payments against the Franklins' account which resulted in a debit of $18.16. On February 12, 1977, the Franklins removed the '71 Chevrolet pickup truck from the automobile policy and were given a premium refund of $119.00. This refund was sent by the insurer to Carter's. Carter's applied this payment to the Franklins' account which left a credit balance of $100.84. On March 31, 1977, the Franklins renewed their homeowners policy for a premium of $189.00. This amount was debited to the Franklins' account and resulted in a balance due of $88.16. On April 5, 1977, the Bank called on Carter's to pay the March and April 1977 installments due on the December 1976 note plus a late charge of $1.74 for a total of $71.16. Carter's charged these payments against the Franklins' account which resulted in a balance due of $159.32. On April 11, 1977, Carter's was required by the Bank to pay $61.50 due on another Franklin note and this sum was charged to the Franklins' account. On April 13, 1977, Carter's received a credit of $36.45 for the Franklins' account from the Bank. On May 8, 1977, the Bank required Carter's to pay the balance due of $69.42 on the December 1976 note. On that same date, the Bank transmitted to Carter's a credit of $31.50 for the Franklins' account. These transactions left a balance due by the Franklins on their account with Carter's of $222.29 at that time.

B. THE NOTES OF MARCH AND MAY, 1979
Prior to February 26, 1979, the Franklins had a balance due on their account with Carter's of $195.61. On February 26, 1979, the Franklins secured automobile insurance on their '73 Mercury at a cost of $537.00. This amount was debited against their account by Carter's leaving a balance due of $732.61. On March 1, 1979, Yvonne Franklin executed a promissory note in favor of the Bank for $529.70 with 8% per annum interest from maturity and payable in 10 equal monthly installments of $52.97 each commencing April 1, 1979. Carter's endorsed this note as a guarantor. The Truth in Lending disclosure statement executed in connection with this loan shows that the amount financed was $488.80 and the finance charge was $40.90. On that same date, the Franklins paid the $488.80 to Carter's leaving a balance due on their account of $243.81. On March 12,1979, the Franklins paid $50.00 on their account directly to Carter's. On March 26, 1979, the Franklins paid $20.00 on their account directly to Carter's. On March 31, 1979, the Franklins renewed their homeowners policy at a premium of $261.00 increasing their balance due with Carter's to $434.81. On May 22, 1979, Yvonne Franklin executed a promissory note in favor of the Bank for $265.10 with 8% per annum interest from maturity and payable in 8 equal monthly installments of $33.14 each commencing June 15, 1979. Carter's endorsed this note as a guarantor. The Truth in Lending disclosure statement executed in connection with this loan shows that the amount financed *811 was $248.46 and the finance charge was $16.64. On that same date, the Franklins paid the $248.46 to Carter's leaving a balance due on their account of $186.35. On July 17, 1979, the Bank called on Carter's to pay the June and July 1979 installments due on the May 1979 note with a late charge of $1.66 for a total of $67.94. On August 10, 1979, the Franklins cancelled their homeowners policy and had a refund on their premium of $166.00. This refund was sent by the insurer to Carter's who applied it to the Franklins' account leaving a balance due of $88.29. On September 19, 1979, the Bank called on Carter's to pay the August and September 1979 installments due on the May 1979 note with a late charge of $1.66 for a total of $67.94. This increased the balance due on the Franklins' account to $154.23. On September 21,1979, the Bank made Carter's redeem the balance due on the May 1979 note of $132.54. On December 6, 1979, the Bank required Carter's to pay two past due installments on the March 1979 note with a late charge of $2.65 for a total of $108.59. On March 6, 1980, the Bank required Carter's to redeem the balance due on the March 1979 note of $58.27. The balance on the Franklin account with Carter's at that time was $455.63. At the trial, the Franklins produced a receipt dated December 3, 1976, for a payment in the sum of $30.00 which was made directly to Carter's, but which was not credited against their account. This reduced the final balance to $425.63.

II. CLAIM FOR THE DECEMBER 1976 NOTE
The trial court rendered judgment in favor of Carter's on the December 1976 note for $175.29, with 8% per annum interest thereon from August 5, 1977, until paid, together with an attorney fee of 25% of the principal and interest due. The Franklins assert that the premium refund of $119.00 made on their behalf to Carter's on February 12, 1977, should have been credited against the December 1976 note pursuant to the doctrine of mitigation of damages recognized in Unverzagt v. Young Builders, Inc., 252 La. 1091, 215 So.2d 823 (1968) and Lawyers Title Insurance Company v. Carey Hodges & Associates, Inc., 358 So.2d 964 (La.App. 1st Cir.1978).
The doctrine of imputation of payments, La.C.C. arts. 2163 et seq., and not that of mitigation of damages, is applicable under the facts of this case. Carter's was required to redeem the December 1976 note in May of 1977. After that date, almost $2,000.00 in credits were entered on the Franklins' account. These credits were indiscriminately applied against the balance due on the account, and were not designated by either the Franklins or Carter's for a specific portion of the account. In the absence of a designation by the debtor or the creditor, payments made on accounts are imputed to those which the debtor has the most interest in discharging, and if there are several of the same nature, the payments are to be applied to the oldest. La. C.C. art. 2166; Sanders v. Pasternack, 386 So.2d 685 (La.App. 3rd Cir.1980); Bonura v. Christiana Bros. Poultry Co. of Gretna, Inc., 336 So.2d 881 (La.App. 4th Cir.1976); Washington v. King, 331 So.2d 112 (La.App. 1st Cir.1976). Between paying the general account which did not bear interest and paying the December 1976 note which did (and which also had a potential liability for an attorney fee), clearly the Franklins had a greater need to discharge the note. The payments made on the account should have been credited to the note first and thereafter to the open account. Had this been done the $242.97 note of December 1976 would have been satisfied long before suit was filed. The Franklins are entitled to judgment in their favor dismissing the claim on this note.

III. DID CARTER'S VIOLATE THE TRUTH IN LENDING LAW?
The Franklins assert that Carter's is a "creditor" in the contemplation of the Truth in Lending Act, 15 U.S.C. 1601 et seq., and that it violated the regulations promulgated thereunder, 12 C.F.R. § 226.4(a), § 226.5(b), § 226.8(d)(1), by failing to disclose its policy of applying refunded premiums to the "customer's" account instead *812 of returning them directly to the "customer".
In the instant case, the Bank was a "creditor" in the contemplation of the Truth in Lending Act at the time of the transactions and was required to make certain disclosures. It "regularly extends ... consumer credit ... for which the payment of a finance charge is or may be required...." 15 U.S.C. 1602(f). The guarantor of a consumer credit transaction, such as Carter's, is not a "creditor" under Truth in Lending Regulations. Regulation 12 C.F.R. 226.2(u) defines a "Customer" as "a natural person to whom consumer credit is offered or to whom it is or will be extended, and includes a comaker, endorser, guarantor, or surety for such natural person who is or may be obligated to repay the extension of consumer credit."[2] (Emphasis added). Barash v. Gale Employees Credit Union, 659 F.2d 765 (7th Cir.1981). Since Carter's is not a "creditor" in the contemplation of the Truth in Lending Act, it is not required to make disclosures.
This assignment of error is without merit.

IV. LIABILITY FOR ATTORNEY FEES
The Franklins assert that they should not be liable for the attorney fees provided for in the promissory notes.[3] They testified that they were not informed of these provisions before they signed the notes, they did not read the notes, and would not have signed the notes had they known of these terms. The Franklins also contend that a 25% attorney fee is unconscionable.
Agreements legally entered into have the effect of laws on those who have formed them. La.C.C. art. 1901. In the absence of fraud, parties signing a written agreement are presumed to know its contents. Lama v. Manale, 218 La. 511, 50 So.2d 15 (1950); Jackson v. Continental Casualty Company, 402 So.2d 175 (La.App. 1st Cir.1981), reversed on other grounds 412 So.2d 1364 (La.1982); Mitchell v. Bertolla, 397 So.2d 56 (La.App. 2nd Cir.1981), writ denied, 400 So.2d 669 (La.1981); Lazybug Shops, Inc. v. American District Telegraph, 374 So.2d 183 (La.App. 4th Cir.1979), writ denied, 376 So.2d 1271 (La.1979); LeNy v. Friedman, 372 So.2d 721 (La.App. 4th Cir. 1979), writ denied, 375 So.2d 943 (La.1979); South Central Bell Telephone Company v. McKay, 285 So.2d 563 (La.App. 1st Cir. 1973). The Franklins did not allege fraud and admitted signing the notes.
When the services of an attorney are necessary for the collection of an obligation which is not paid at maturity and the attorney fees are stipulated in the instrument evidencing the obligation, the said fees become due in full when the obligation is not paid, regardless of the value of such services. W.K. Henderson Iron Works & Supply Co. v. Meriwether Supply Co., 178 La. 516,152 So. 69 (1934); Leenerts Farms, Inc. v. Rogers, 411 So.2d 576 (La.App. 1st Cir. 1982); Fidelity National Bank of Baton Rouge v. Pitchford, 374 So.2d 149 (La.App. 1st Cir.1979).
This assignment of error is without merit.

V. CONCLUSION
For the foregoing reasons, the judgment of the trial court in favor of Carter's on the December 1976 note is reversed and that claim is dismissed. In all other respects, the judgment of the trial court is affirmed. The appellants are to pay all costs of this appeal.
AFFIRMED IN PART AND REVERSED IN PART.

*813 ON REHEARING
LANIER, Judge.
We granted this rehearing because of the Louisiana Supreme Court ruling in Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La. 1982), the appellee requested judgment for the balance due on the open account portion of the account (this is a suit on three promissory notes), and appellants questioned the imputation of the August 1979 insurance premium refund.

LIABILITY FOR ATTORNEY FEES
On original hearing, we ruled that when the services of an attorney are necessary for the collection of an obligation and an attorney fee is provided for in the instrument evidencing the obligation, the said fee becomes due in full when the obligation is not timely paid, regardless of the value of such services, citing W.K. Henderson Iron Works & Supply Co. v. Meriwether Supply Co., 178 La. 516, 152 So. 69 (1934) and Fidelity National Bank of Baton Rouge v. Pitchford, 374 So.2d 149 (La.App. 1st Cir. 1979). These cases have been overruled by Leenerts Farms, Inc. v. Rogers, supra, wherein the court held that attorney fees are subject to review and control by the courts, and that the reasonableness of stipulated attorney fees may be inquired into.[1] In brief counsel for the Franklins concedes that "defendants have no contest to the reasonableness of a 25% fee in the instant case." Because of the relatively small amount in contest, the legal issues involved, and the work obviously required to bring this matter to a conclusion, we agree that the 25% fee is reasonable.
The Franklins contend that they are not liable for attorney fees under the promissory notes because "... they were not advised of any terms contained in the notes relative to their liability for attorneys fees should they default on the notes..." Each of the notes contains the following provisions:
"In the event that this note or any installment thereof, or the interest thereon, is not paid when due, and this note is placed in the hands of an attorney at law for collection, or is sued upon 25% additional on the amount of both principal and interest shall be paid as attorney's fees."
The courts are bound to give legal effect to all written contracts according to the true intent of the parties and this intent is to be determined by the words of the contract when these are clear, explicit and lead to no absurd consequences. La.C.C. art. 1945; Leenerts Farms, Inc. v. Rogers, supra, at 218; Campesi v. Margaret Plantation, 417 So.2d 1265 (La.App. 1st Cir.1982), writ denied, 422 So.2d 163 (La.1982). The meaning and intent of the parties to the written contract in such cases must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. La.C.C. art. 2276; Tauzin v. Claitor, 417 So.2d 1304 (La. App. 1st Cir.1982), writ denied, 422 So.2d 423 (La.1982). In such a case, a person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained, or that he did not understand it. Lama v. Manale, 218 La. 511, 50 So.2d 15 (1950); Jackson v. Continental Casualty Company, 402 So.2d 175 (La.App. 1st Cir.1981), reversed on other grounds 412 So.2d 1364 (La.1982); Mitchell v. Bertolla, 397 So.2d 56 (La.App. 2nd Cir.1981), writ denied, 400 So.2d 669 (La. 1981); Lazybug Shops, Inc. v. American District Telegraph Co., 374 So.2d 183 (La. App. 4th Cir.1979), writ denied, 376 So.2d 1271 (La.1979); LeNy v. Friedman, 372 So.2d 721 (La.App. 4th Cir.1979), writ denied, 375 So.2d 943 (La.1979); South Central Bell Telephone Company v. McKay, 285 So.2d 563 (La.App. 1st Cir.1973). However, when the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language *814 employed, or fraud is alleged, parol evidence is admissible to clarify the ambiguity and to show the intention of the parties. Dixie Campers, Inc. v. Vesely Company, 398 So.2d 1087 (La.1981); Tauzin v. Claitor, supra.
The provisions of the notes concerning attorney fees are clear, explicit and lead to no absurd consequences. The Franklins did not allege fraud and admitted signing the notes. However, the Franklins were allowed to testify, without objection, that they were not informed of the attorney fee provisions before they signed the notes, they did not read the notes, and would not have signed the notes had they known of these terms. The failure to object to this evidence in the trial court constitutes a waiver of the right to assert the presumption and a waiver of the right to complain about the trial judge's consideration of the evidence. Temple v. Liberty Mutual Ins. Co., 330 So.2d 891 (La.1976); Belaire v. Vanderbrook, 405 So.2d 1143 (La.App. 1st Cir.1981), writs denied, 407 So.2d 749 (La. 1981) and 409 So.2d 659 (La.1982).
The trial judge, after hearing the above testimony, nevertheless granted judgment in favor of Carter's for attorney fees. The finder of fact in the trial court must assess the credibility of witnesses and may refuse, or accept, all or part of the testimony of any witness. Holmes v. Southeastern Fidelity Insurance Company, 422 So.2d 1200 (La.App. 1st Cir.1982). Obviously, the trial judge rejected the testimony of the Franklins on the issue of attorney fees. After reviewing the record, we cannot say that this determination is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

ALLOCATION OF REFUND FROM HOMEOWNERS POLICY
On rehearing, the Franklins contend that the entirety of the premium refund of $166.00 received on August 10, 1979, from their homeowners policy should be credited against the note executed by Yvonne Franklin on May 22, 1979, because that note was in default as of July 17,1979. La.C.C. art. 2166.
On May 22, 1979, Yvonne Franklin executed a promissory note in favor of the Bank of Greensburg for $265.10 with 8% per annum interest from maturity and payable in 8 equal monthly installments commencing June 15, 1979. Carter's endorsed this note as a guarantor. The proceeds of this note, $248.46, were paid by the Franklins to Carter's leaving an open account balance due of $186.35. The Franklins made a payment to Carter's of $30.00 on December 3,1976, but this payment was not credited to their account until it was discovered at the trial. Thus, the balance actually due on May 22, 1979, was $156.35. On July 17,1979, the Bank called on Carter's to pay the June and July 1979 installments ($33.14 each) due on the May 1979 note, with a late charge of $1.66, for a total of $67.94. Carter's charged this payment against the Franklins' account increasing it to $224.29. The Franklins cancelled their homeowners policy. The refund on this policy of $166.00 was sent to Carter's. Carter's applied it to the Franklins' account on August 10, 1979, leaving a balance due of $58.29.
The May 1979 note provided in pertinent part as follows:
"In the event any installment shall not be paid within 10 days after its scheduled or deferred due date, maker or makers agree to pay an amount not exceeding the greater of (1) 5% of the unpaid amount of the installment but not exceeding $5.00, or (2) the deferral charge that would be permitted to defer the unpaid amount of the installment for the period that is delinquent.
"In the event that an installment is not paid within 10 days after its due date, bearer may unilaterally grant a deferral and whenever deferral is made, bearer may make and collect a charge for such deferral not to exceed the annual percentage rate previously stated herein calculated without regard to the differences in the length of months but proportionately for a part of a month, counting each *815 day as 1/30th of a month. Such deferral charge may be collected at the time it is assessed or at any time thereafter.
"Any failure on the part of the maker or makers to pay any installment of this note, or the interest thereon, promptly when due, shall ipso facto, and without any demand or putting in default, cause this note and each and every installment thereof to become immediately due and exigible, and shall mature every other debt, liability or obligation, direct or contingent, due by the undersigned, or any of them, to said bank without demand or notice or putting in default."
It is apparent that the Bank elected to defer the due dates on the June and July 1979 installments of the May 1979 note and collect late charges, rather than accelerate the entire note. Thus, the remaining 6 installments on the May 1979 note were not due at the time of the refund. Since the 6 installments were not due and had not been paid by Carter's, Carter's had no claim against the Franklins for these amounts. La.C.C. art. 3052; Louisiana Bank and Trust Company, Crowley v. Boutte, 309 So.2d 274 (La.1975). Carter's could only give the Franklins credit for the amounts due at that time.[2]

CARTER'S ENTITLEMENT TO AMOUNT DUE ON OPEN ACCOUNT
On September 19, 1979, the Bank called on Carter's to pay the August and September 1979 installments due on the May 1979 note with a late charge of $1.66 for a total of $67.94. On September 21, 1979, the Bank accelerated the May 1979 note and made Carter's redeem the balance of $132.54. Carter's is entitled to recover the $200.48 that it paid on this note from the Franklins.
On December 6, 1979, the Bank required Carter's to pay two past due installments on the March 1979 note ($52.97 each) with a late charge of $2.65 for a total of $108.59. On March 6, 1980, the Bank required Carter's to redeem the balance due on the March 1979 note of $58.27. Carter's is entitled to recover the $166.86 that it paid on this note from the Franklins.
The trial court allocated the entirety of the $455.63 due on the Franklins' account between the 3 promissory notes sued upon, subject to a credit of $30.00. We ruled on original hearing that Carter's was not entitled to recover on the December 1976 note. The trial judge allocated $172.86 and $105.74 to the March 1979 and May 1979 notes, in accordance with the prayer of Carter's petition. These amounts are clearly incorrect.
The balance due on the Franklins' account when all transactions were completed was $425.63, which sum represented $200.48 due on the May 1979 note, $166.86 due on the March 1979 note and $58.29 due on the open account. Carter's contends that even though this is a suit on 3 promissory notes, it is entitled to a judgment on the open account pursuant to La.C.C.P. art. 2164.
The "theory of the case" doctrine has been abolished in Louisiana as a pleading requirement or restriction. La.C. C.P. arts. 862, 1154 and 2164.[3] Our code of civil procedure sets forth a system of fact pleading. If the facts constituting the claim or defense are alleged or proved, a party may be granted any relief to which he is entitled under the pleadings and the evidence. Cox v. W.M. Heroman & Co., Inc., 298 So.2d 848 (La.1974); Primeaux v. Bennett Homes, Inc., 339 So.2d 1251 (La. App. 1st Cir.1976). If the record contains all of the evidence necessary to adjudicate an issue not raised in the trial court, an appellate court has the authority to act. Castille v. Folck, 338 So.2d 328 (La.App. 3rd Cir.1976). However, if an opposing party was not given a reasonable opportunity in *816 the trial court to assert affirmative defenses and present evidence, or if adequate notice of the issue was not given, the issue should not be considered. Lanier Business Products, Inc. v. First National Bank of Rayville, 388 So.2d 442 (La.App. 2nd Cir. 1980).
Although this commenced as an action on 3 promissory notes, the ledger sheets of the Franklins' account with Carter's were used to prove the amounts due on the notes. The record contains testimony from all parties concerning the Franklins' transactions with Carter's from December of 1976, through March of 1980. The ledger sheets were filed in evidence and the parties were examined and cross-examined concerning them. Also filed in evidence was the receipt for $30.00 given to the Franklins on December 3,1976, account records of the Bank on the notes, and various correspondence and records concerning the account. The evidence shows that the Franklins had an open account balance due of $58.29. Under the particular facts and circumstances of this case, Carter's is entitled to a judgment for that amount.

CONCLUSION
For the foregoing reasons, there will be judgment on the promissory note of March, 1979, in favor of Carter's and against the Franklins, jointly, severally and in solido, in the sum of $166.86, with interest thereon at the rate of 8% per annum from March 6, 1980,[4] until paid, together with an attorney fee of 25% of the principal and interest due; there will be judgment on the promissory note of May, 1979, in favor of Carter's and against the Franklins, jointly, severally and in solido, in the sum of $200.48, with interest thereon at the rate of 8% per annum from January 15,1980,[5] until paid, together with an attorney fee of 25% of the principal and interest due; and there will be judgment in favor of Carter's and against the Franklins, jointly, severally and in solido, in the sum of $58.29, with legal interest[6] thereon from date of judicial demand until paid. The appellants are cast for all costs.

AMENDED AND AFFIRMED.

APPENDIX 1
La.C.C.P. art. 862:
"Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.
. . . . .
"(b) Even more important, this article, together with Art. 1154, infra, suppresses the harsh and unduly technical `theory of the case' doctrine in Louisiana, under which the litigant must select a theory of his case or defense and adhere to it throughout the litigation and which has been severely criticized...."
La.C.C.P. art. 1154:
"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may *817 grant a continuance to enable the objecting party to meet such evidence."
La.C.C.P. art. 2164:
"The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.
. . . . .
"(a) The purpose of this article is to give the appellate court complete freedom to do justice on the record irrespective of whether a particular legal point or theory was made, argued, or passed on by the court below. This article insures that the `theory of a case' doctrine, which has served to introduce the worst features of the common law writ system into Louisiana is not applicable to appeals under this Code. See Hubert, The Theory of a Case in Louisiana, 24 Tul.L.Rev. 66 (1949)."
NOTES
[1] Appellants obtained an order for a suspensive appeal, but failed to post the suspensive appeal bond. Nelson v. Stafford, 385 So.2d 293 (La. App. 1st Cir.1980); Allstate Insurance Company v. Louisiana Gas Service Company, 340 So.2d 698 (La.App. 4th Cir.1976); Ferina v. Howard, 285 So.2d 805 (La.App. 3rd Cir.1973).
[2] If Carter's had "arranged" the loans for the Franklins with the Bank, and had not guaranteed payment of them, then it could have been a "creditor" in the purview of 15 U.S.C. 1602(f), provided it either received a fee for such service or participated in the preparation of the loan documents. Baxter v. Sparks Oldsmobile, Inc., 579 F.2d 863 (4th Cir.1978); Stefanski v. Mainway Budget Plan, Inc., 456 F.2d 211 (5th Cir.1972); 12 C.F.R. § 226.2(h).
[3] Each of the promissory notes contains the following provision:

In the event that this note or any installment thereof, or the interest thereon, is not paid when due, and this note is placed in the hands of an attorney at law for collection, or is sued upon 25% additional on the amount of both principal and interest shall be paid as attorney's fees.
[1] The decision on original hearing in the instant case was rendered on October 12, 1982, and the Leenerts Farms case was decided on October 18, 1982.
[2] The sum of $67.94 due for the June and July 1979 installments must be paid first out of the refund. The balance of the refund is credited to the open account.
[3] See Appendix 1 attached hereto for the full text of these citations with pertinent revision comments.
[4] The date that Carter's was required to redeem the note.
[5] The maturity date of the last installment.
[6] See La.C.C. art. 2924.