**Wanda Larry SEARCY, Plaintiff-Appellant,**

v.

**FIDELITY BANKERS LIFE INSUR-ANCE CO., Defendant-Appellee.**

Court of Appeals of Tennessee, Western Section.

May 11, 1983.

Application for Permission to Appeal Denied by Supreme Court Aug. 1, 1983.

R. Layne Holley, Memphis, for plaintiff-appellant.

James M. Glasgow and James M. Glasgow, Jr., of Elam, Glasgow, Tanner & Acree, Union City, for defendant-appellee.

TOMLIN, Judge.

Plaintiff, by this litigation, is seeking to obtain the proceeds of a credit life insurance certificate issued to her late father under a master group policy sold by the defendant insurer to the Bank of Obion. The Chancery Court of Obion County dismissed her suit on the grounds that the certificate of insurance had been issued in violation of two policy provisions. The principal issue presented by this appeal is whether or not the Tennessee Incontestability Statute, codified as T.C.A. § 56–7–301(3), precludes the defendant insurer from raising these two policy provisions in denying coverage. In our opinion, the incontestability statute is not applicable, and we affirm the chancellor.

The facts are not in dispute. The Bank of Obion purchased a group master credit

life insurance policy from the defendant, under which credit life certificates could be issued to the bank's qualifying debtors. The maximum amount of insurance that could be written under the master policy was $7,500. Certificates of insurance were authorized to be issued by certain officials of the bank and by Mr. Harold Searcy, the agent for the defendant who sold the master policy, who was also the son-in-law of Mr. Buryl Larry.

In December, 1974, Searcy issued a certificate for $10,000 under the master policy to his father-in-law, Larry. The certificate was sold directly to Mr. Larry rather than being written through the bank. At the time the certificate was issued, Searcy did not know whether or not Mr. Larry was indebted to the Bank of Obion. As a matter of fact, at the time of the issuance of the certificate, neither Mr. Larry nor Mr. Searcy was indebted in any way to the bank. Subsequent to the issuance of this certificate, Searcy obtained a loan from the Bank of Obion, which was cosigned by his father-in-law, Larry. The proceeds of the loan were paid to Searcy.

When Mr. Larry died in July, 1977, the bank filed a claim with the defendant under the certificate for the payment of the balance of Searcy's note. The defendant denied the claim. The debt was ultimately paid off by Searcy, at which time the bank assigned the insurance certificate to the plaintiff, who filed this lawsuit after the defendant declined to honor her request for payment.

The chancellor wrote an excellent memorandum opinion in which he found all the material facts, none of which appears to be questioned on appeal. Our review of his findings made at the bench trial below is de novo, and there is a presumption of correctness unless a preponderance of the evidence is otherwise. Rule 13(d) T.R.A.P.

The defendant denied coverage, claiming that both of the following provisions of the policy were violated:

## II. INSURING PROVISIONS

Each Debtor shall become eligible beginning with the first day on or after the effective date of this policy on which he is indebted to the Creditor, subject, however, to the following conditions.

. . . .

(3) In no case shall more than one person be insured on account of any one indebtedness. If there is more than one Debtor and the Debtors are husband and wife, the person to be insured shall be the husband, unless he is wholly dependent on the wife for support, in which case the wife shall be the insured Debtor, and if the Debtors are not husband and wife, the person to be insured shall be the first named on the instrument creating the indebtedness.

It is the position of the plaintiff that the incontestability clause, codified as T.C.A. § 56–7–301(3), precludes the defendant from relying on the above-stated policy provisions. That code section reads as follows:

*Provisions and conditions required in life insurance policies.*—No policy of life insurance shall be issued in this state or be issued by a life insurance company organized under the laws of this state unless the same shall contain the following provisions:

. . . .

(3) POLICY IS ENTIRE CONTRACT; INCONTESTABILITY; EXCEPTIONS. A provision that the policy shall constitute the entire contract between the parties, and shall be incontestable after it shall have been in force during the lifetime of the insured for a specified period, not more than two (2) years from its date, except for nonpayment of premiums and except for violations of the conditions of the policy relating to naval and military services in time of war.

█ Incontestability clauses such as codified above, while precluding the raising of the defense that an insurance policy is invalid, do not affect the raising of coverage questions by the insurer. In *Smith v. Equitable Life Assurance Society,* 169 Tenn. 477, 403, 89 S.W.2d 165, 167 (Tenn.1935), our Supreme Court stated:

We think it apparent that the confusion which seems to have arisen in this case, and in several of those relied on for the insured, is due to a failure to appreciate the distinction between "a denial of coverage and a defense of invalidity" which Chief Justice Cardozo, when on the Court of Appeals of New York, so clearly emphasized in his opinion in *Metropolitan Life Ins. Co. v. Conway,* 252 N.Y. 449, 169 N.E. 642. In that case he said: "The provision that a policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years is not a mandate as to coverage, a definition of the hazards to be borne by the insurer. It means only this, that within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken."

The crux of the issue that this Court is here called upon to review is the decision of the chancellor that the incontestability clause did not bar the defendant from asserting a defense of lack of coverage in the case where the person sought to be insured did not meet two of the insuring conditions in the policy. We have found no Tennessee cases directly on point. The plaintiff relies heavily upon *Simpson v. Phoenix Mutual Life Insurance Co.,* 24 N.Y.2d 262, 299 N.Y. S.2d 835, 247 N.E.2d 655 (N.Y.Ct.App.1969). In *Simpson,* the insured's widow brought suit on a group life insurance certificate. The master policy issued to the employer by the defendant required an employee to work at least 30 hours a week before he was eligible for coverage. Plaintiffs' decedent worked only a few hours a month. The issue before the court in *Simpson* was whether the 30 hours-per-week requirement was a condition of insurance under the policy, or a limitation of the risk. The court in *Simpson* held that since employment was discoverable by the insurer it was a condition of insurance. We do not believe that *Simpson* represents the better view.

We begin with the holding of our Supreme Court in *Smith, supra.* Following the line of reasoning adopted therein, there are cases from other jurisdictions dealing with factual situations more analogous to those under consideration. In *Home Life Insurance Co. v. Regueira,* 313 So.2d 438 (Fla. 2d Dist.Ct.App.1975), the deceased employee's widow brought suit to recover the proceeds under a life insurance certificate that had been issued under a group master policy held by the deceased's employer. The insured defended on the ground that the deceased was not a full-time employee as required by the terms of the master policy. The Florida court aptly stated the issue:

> The threshold question in these cases involving applicability of an incontestability clause is whether the claim of the insurer relates to the validity of the policy or whether it relates to limitations of coverage. If it relates to the former it is barred; if to the latter it is not.

Id. at 439.

In holding that the incontestability clause did not apply, the Florida court quoted with approval the following language from *Crawford v. Equitable Life Assurance Society,* 56 Ill.2d 41, 305 N.E.2d 144, 149 (1973):

> While the broad distinction drawn . . . between a policy's limits of coverage and its validity has been quite generally recognized, differences of opinion have arisen as to its application, particularly with respect to group life insurance. (See e.g., Keeton, Basic Text on Insurance, sec. 6.5(d); Young, "Incontestable—As to What?", 1964 U.Ill.L.F.) With individual life insurance the policy identifies a specific individual by name, and it is relatively easy to distinguish between a question of coverage (the death of the insured or his death from specific cause) and a question of validity created by antecedent misrepresentations on the part of the insured. In the case of group life insurance, however, the master policy undertakes to provide insurance for a collection of unnamed persons defined only in terms of membership in a class, such as the employees of a certain company. To ascertain whether a person is insured necessitates a determination of whether he is in fact a member of the class. To the extent that that determination is based upon information furnished by the em-

ployer or by an employee or alleged employee, the question whether coverage exists tends to become intertwined with the question whether the coverage was obtained by false representations.

. . . .

We, however, consider that *the question of eligibility is one which relates to the risk assumed and that a defense based on lack of eligibility is therefore not foreclosed by an uncontestability clause.*

. . . .

And it may be assumed that whether a person is an employee or is a full time employee is a matter affecting the willingness of the insurer to assume the defined risk at the defined premium charge, since employment or active or full-time employment may protect the insurer against adverse selection. *See* Gregg, Group Life Insurance (2d ed.) 34–46.

313 So.2d at 440.

In *Fisher v. Prudential Insurance Co. of America,* 107 N.H. 101, 218 A.2d 62 (1966), the New Hampshire Supreme Court held that the incontestability clause was inapplicable because the plaintiff's decedent, never having been an employee, was never insured. In rendering its opinion, the Court adopted with approval the following language from *Fisher v. United States Life Insurance Co. in the City of New York,* 249 F.2d 879, 882 (4th Cir.1957):

> [T]he incontestable clause, after the passage of the stipulated period, proscribes defenses which go to the validity of the policy whether because of noncompliance with conditions or the falsity of representations or warranties. It was never intended to enlarge the coverage of the policy, to compel an insurance company to insure lives it never intended to cover or to accept risks or hazards clearly excluded by the terms of the policy.

218 A.2d at 65.

In *First Pennsylvania Banking And Trust Co. v. United States Life Insurance Co. in the City of New York,* 421 F.2d 959 (3rd Cir.1969), applying Pennsylvania law, the Third Circuit, adopting the holding in *Fish-*

*er v. United States Life, supra,* and declining to follow the *Simpson* case, held that the incontestable clause of a life insurance policy relates to defenses that go to the validity of the policy, but it did not enlarge the coverage of the policy to compel the insurance of lives that the insurer never intended to cover, or to accept risks or hazards clearly excluded by the policy.

■ Without question, we are dealing here with a matter of coverage, and not the matter of the validity of the policy itself. The "insured," Mr. Larry, at the time the certificate was issued, was not indebted to the bank. Later, when he did become indebted to the bank he was a co-signer, and was not "the first named" on the instrument creating the indebtedness, another requirement that had to be met in order to become insured. We hold that since the deceased was never insured under the defendant's policy, the plaintiff cannot rely upon the incontestability statute to the detriment of the defendant.

For the reasons stated above, the judgment of the chancery court dismissing plaintiff's complaint is affirmed. The costs in this cause are taxed to the plaintiff, for which execution may issue, if necessary.

CRAWFORD and HIGHERS, JJ., concur.