**Richard J. RAPAK, Plaintiff-Appellee,**

v.

**COMPANION LIFE INSURANCE COMPANY, Defendant-Appellant.**

No. 91–1712.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 31, 1991.

Decided April 6, 1993.

Duval Cravens Ravenel, Baker, Barwick, Ravenel & Bender, Columbia, SC, argued, for defendant-appellant.

Robert P. Wood, Sherrill & Rogers, P.C., Columbia, SC, argued, for plaintiff-appellee.

Before PHILLIPS and WILKINS, Circuit Judges, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.

## OPINION

WILKINS, Circuit Judge:

The issue before us concerns the interpretation and application of an incontestability clause as required by S.C.Code Ann. § 38–65–210 (Law. Co-op.1989) in a group life insurance policy. Because the issue raised was one of state law which the courts of South Carolina had not resolved, we certified the question to the Supreme Court of South Carolina. Construing the express language of the insurance policy, the court held that the incontestability clause must be given effect. Consequently, we affirm the decision of the district court.

### I.

In May of 1970, Gloria A. Rapak commenced employment with White Oak Manor Capital Convalescent Center[1] in Colum-

---

1. Mrs. Rapak actually worked for MGR, Incorporated, which subsequently changed its name to White Oak Manor Capital Convalescent Center. For ease of discussion we refer to MGR,

bia, South Carolina. On July 15, 1980, Companion Life Insurance Company (Companion Life) issued to White Oak Manor a group life insurance policy providing a scheduled benefit amount of $4,000 for all employees. Mrs. Rapak executed a Notice of Election form designating her husband, Richard J. Rapak, as the beneficiary of the death benefit. As a result of a terminal illness, Mrs. Rapak ceased employment in July of 1982 and never returned to work.

In 1983, White Oak Manor increased the life insurance benefits available under the Companion Life group policy by supplementing the existing policy with an endorsement that increased the life insurance benefit for its employees from $4,000 to $54,000. Full-time employment by White Oak Manor was an express condition of eligibility for this increase. The application of White Oak Manor for the increased group life insurance coverage included a list of current employees and a certification that all persons to be insured under the policy were "full-time, active employees working 30 or more hours per week" as required by policy provisions. Although not employed by White Oak Manor at this time, or at any time thereafter, Mrs. Rapak's name was included on this list of full-time, current employees.

White Oak Manor completely funded the policy without contribution from employees, paying monthly premiums based on a roster of current employees of White Oak Manor. White Oak Manor did not inform Companion Life that Mrs. Rapak ceased employment in 1982 or that she was not employed at the time of the increase. However, her name was continually listed on the roster of White Oak Manor employees until her death on September 26, 1987.[2] White Oak Manor subsequently submitted a claim on behalf of Mr. Rapak seeking death benefits under the policy in the amount of $54,000, noting on the claim form that the last date on which Mrs. Rapak was employed was August of 1982.

Companion Life allowed the claim in the amount of $4,000, but declined to award the $50,000 in benefits representing the increased coverage on the ground that Mrs. Rapak was not eligible for this insurance because she was not employed by White Oak Manor at inception of the increased coverage or at any time thereafter.

Following a bench trial, the district court concluded that Mr. Rapak was entitled to recover $54,000 in benefits. The court determined as a matter of law that the incontestability clause barred Companion Life from raising the defense of ineligibility based on Mrs. Rapak's employment status at the time the increased coverage took effect. Companion Life appeals from this adverse ruling.

## II.

The group policy issued by Companion Life contains an eligibility clause, which provides:

> The amount(s) of Personal Insurance of each employee insured hereunder shall be in accordance with the following Schedule. Any change in amount in accordance with said Schedule shall become effective on the fifteenth of the insurance month following the date of change in the employee's classification, provided, that if the employee is absent from active work and is disabled on the date a change in amount would become effective in accordance with this paragraph, such change shall not become effective until the date on which he is actively at work on full-time unless said change is a reduction in amount of insurance due to attainment of a specified age or retirement of the employee.

An incontestability clause in the policy further provides:

> After this policy has been in force for a period of two years, it shall become incontestable as to statements of the Policyholder contained in the application;

---

Incorporated and White Oak Manor Capital Convalescent Center as "White Oak Manor."

2. The decision of White Oak Manor to continue paying premiums for Mrs. Rapak and not to notify Companion Life of her cessation of employment apparently resulted from humanitarian concerns and as an expression of gratitude for her faithful service.

and no statement made by any employee relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made, after the insurance has been in force during [the] life time of the insured prior to the contest for a period of two years nor unless it is contained in a written instrument signed by him and a copy of the instrument containing the statement is or has been furnished to such person or beneficiary.

The incontestability clause is similar to a clause required under South Carolina law to be included in all insurance policies issued in the state. *See* S.C.Code Ann. § 38–65–210(2) (Law. Co-op.1989). The pertinent statute provides in relevant part:

**Provisions required in all policies.**

No policy of group life insurance may be delivered in this State unless it contains in substance the following provisions or provisions which in the opinion of the Commissioner are more favorable to the persons insured or at least as favorable to the persons insured and more favorable to the policyholder....

....

(2) A provision that the validity of the policy may not be contested, except for nonpayment of premiums, after it has been in force for two years from its date of issue and that no statement made by any person insured under the policy relating to his insurability may be used in contesting the validity of the insurance with respect to which the statement was made after the insurance has been in force before the contest for a period of two years during the person's lifetime nor unless it is contained in a written instrument signed by him.

*Id.*

Thus, the issue presented is whether an incontestability clause contained in an employer-funded group life insurance policy bars the insurer from asserting a defense that the named insured was ineligible for insurance because the named insured was not an employee at the inception of the increased coverage as an express condition

required. Opposing answers to this question are found in two lines of cases. *See generally* Annotation, *Misrepresentation as to Employer–Employee Relationship as Within Incontestability Clause of Group Insurance,* 26 A.L.R.3d 632 (1969). The majority of courts have followed the rule of *Simpson v. Phoenix Mutual Life Insurance Co.,* 24 N.Y.2d 262, 299 N.Y.S.2d 835, 838, 247 N.E.2d 655, 657 (1969), holding that the incontestability clause bars the defense. The district court followed the *Simpson* line of cases to find in favor of Mr. Rapak. A substantial minority of jurisdictions, however, have adopted the contrary rule represented by *Crawford v. Equitable Life Assurance Society of the United States,* 56 Ill.2d 41, 305 N.E.2d 144, 149–50 (1973), to hold that the clause does not preclude the defense.

The answer to this question is dispositive of this appeal. Because our review of the cases revealed no controlling precedent from the courts of South Carolina, we concluded that the issue should be resolved authoritatively by the state supreme court. Accordingly, we certified to the Supreme Court of South Carolina the following question:

Whether an incontestability clause contained in an employer-funded group life insurance policy bars the insurer from defending its decision not to pay death benefits on the ground that an express condition of coverage that the insured be a full-time employee was not met because the insured was not employed by the employer at the inception of coverage or at any time thereafter.

*Supra* at 803.

The Supreme Court of South Carolina answered the certified question in the affirmative, relying on the plain language of the policy rather than on statutory construction. *Rapak v. Companion Life Ins. Co.,* —— S.C. ——, ——, 424 S.E.2d 486, 488 (1992). Reasoning that "the policy itself expressly provides a two-year contestability period 'as to statements of the Policyholder' rather than simply providing for

contestability regarding 'the validity of the policy' as the statute does," the court concluded that "[s]ince Mrs. Rapak's employment status was certified by statement of the policyholder ... it became incontestable after two years from inception of the supplemental policy." *Id.*

Accordingly, we affirm the decision of the district court.

***AFFIRMED.***