Mark A. RAIFMAN, M.D., Plaintiff,

v.

BERKSHIRE LIFE INSURANCE
COMPANY, Defendant.

No. CV 98–5797(ADS).

United States District Court,
E.D. New York.

Jan. 19, 2000.

Ruskin, Moscou, Evans & Faltischek, P.C., Mineola, New York, for the plaintiff; Kevin Schlosser, of counsel.

Phillips Nizer Benjamin Krim & Ballon LLP, New York City, for the defendant; George Berger, of counsel.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On September 16, 1998, the plaintiff, Mark A. Raifman, M.D. (the "plaintiff" or "Raifman") commenced this lawsuit against the defendant Berkshire Life Insurance Co. (the "defendant" or "Berkshire"), alleging that Berkshire should be compelled to make disability insurance payments under four separate disability and overhead expense insurance policies. The complaint indicates that the plaintiff suffers from severe degenerative disc disease, spinal arthritis, spinal stenosis and an acute disc herniation in his lower spine. After being served with the complaint, Berkshire filed several counterclaims seek-

ing to rescind Raifman's disability and overhead expense insurance policies.

Presently before the Court are two separately filed motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). Berkshire maintains that it is entitled to a judicial recission of the disability income and overhead expense insurance policies it issued to the plaintiff because the plaintiff accepted an offer from Monarch Life Insurance Company ("Monarch") to continue in force a disability insurance policy which he had expressly agreed to discontinue. In addition, the defendant argues that the plaintiff is not entitled to payment of any disability benefits allegedly due after the commencement of his lawsuit. Finally, the defendant submits that the plaintiff has failed to establish an entitlement to punitive damages and attorneys' fees.

The plaintiff's motion for summary judgment requests dismissal of the counterclaims that seek to rescind his disability income and overhead expense insurance policies. The plaintiff contends that Berkshire cannot rescind these policies because (i) it has waived any right to rescind by continuing to accept premiums for these policies for over more than one year after learning the purported grounds upon which it now seeks to rescind, and (ii) each policy contains an incontestability clause

barring the defendant from contesting the policy based on the statements made in the insurance application after the policy has been in effect for two years.

## I. BACKGROUND

The following facts are from the respective Local Civil Rule 56.1 ("Rule 56.1") statements and are not at issue unless otherwise stated. In 1985, the plaintiff applied for and obtained a policy of disability income insurance from the Monarch Life Insurance Company providing a monthly indemnity that the defendant alleges was in the sum of $13,800. On January 29, 1992, the plaintiff submitted to Berkshire an application for disability income and overhead expense disability insurance polices (the "Application") requesting policy benefits of $13,870 monthly indemnity for disability income and $11,870 monthly indemnity for overhead expenses.

Question 12 of the Application stated:

Disability Income Insurance

(Describe all coverage in force including individual, franchise association, group or government plans).

In response to question number 12 of the application, the plaintiff represented as follows:

| Company | Monthly Benefit | Year of Issue | Benefit Period | Other Benefits | To Be Terminated |
|---|---|---|---|---|---|
| Monarch-DI | $13,800 | 1985 | Lifetime | FPO | Yes, upon issue of identical Berkshire policy. |
| Monarch (UNUM –OE | $11,800 | 1985–7 | 24 Months | FPO | Yes, same as above. |
| New England —BO | $200,000 lump payment | 1991 | | | Yes, same as above. |
| Monarch-DI | $400,000 lump payment | 1986 | | | Yes, same as above. |

FPO means future purchase option. In response to question 13 of the Application entitled "Details and Special Requests," the plaintiff stated that "[I]ssuance of Berkshire Policies in the amounts requested with benefits so designated will cause Dr. Raifman to drop corresponding coverage with Monarch and UNUM." In addi-

tion, in response to questions 21(d) and 22(b) of the Application, the plaintiff answered "YES" to inquiries concerning his intent to terminate the existing policies.

The plaintiff signed the Applications below a statement which read in relevant part:

I(we) represent that the answers in this Part 1 are true and compete to the best of my (our) knowledge and belief; and that together with the statements of the Proposed Insured in Part 2, they shall form the basis and be part of the contract of insurance, if issued. . . . Only the President, a Vice–President, the Secretary or an Assistant Secretary [of Berkshire] may make, modify or discharge contracts or waive any of the Company's requirements, and then only in writing.

On March 2, 1993 Berkshire issued Disability Income Policy No. NC H0314219 ("Policy A") to the plaintiff which provided for $13,870 in monthly benefits plus a future purchase option. On the same date, Berkshire issued Disability Income Policy No. NC H0319151 ("Policy B") which provided an additional $100 in monthly indemnity benefits; Overhead Expense Disability Policy No. OE H0314220 ("Policy C") which provided $11,870 in monthly benefits plus a future purchase option; and Overhead Expense Disability Policy No. OE H0319152 ("Policy D") which provided for an additional $100 in monthly indemnity benefits. The plaintiff has always timely paid the premiums for Policies A, B, C and D.

The first page of Policies A and B state that the policy is "non-cancellable and guaranteed renewable to age 65 with conditional continuation of limited benefits after age 65." Similarly, the first page of Policies C and D state that the policy is "non-cancellable and guaranteed renewable to age 65 with right of continuation to age 75." Page seven of Policies A and B state that "[t]his policy will be incontestable as to the statements, except fraudulent statements, contained in the application after it has been in force for a period of two years during your lifetime." Page seven of Policies C and D state that "[t]his policy will be incontestable as to the statements contained in the application after it has been in force for a period of two years during your lifetime."

As represented in the Application, in 1992 the plaintiff ceased making premium payments on the Monarch Policy. On April 30, 1993, the plaintiff received a letter from Monarch that apparently offered to continue or reinstate his policy. In June 1993, the plaintiff accepted Monarch's offer contained in the April letter and continued its Disability Income Policy No. 1827034 by making a one time premium payment to Monarch in the sum of $1,888.33. The defendant contends that by making this payment, the plaintiff continued the Monarch Policy.

The plaintiff further claims that by making this payment, he reinstated the Monarch Policy. The plaintiff claims that on or before June 8, 1998, the defendant was aware of the alleged grounds upon which it now seeks to rescind the Policies. Berkshire admits that the plaintiff was billed for and paid premiums on all four policies after it learned that the plaintiff had reinstated his Monarch coverage. However, Berkshire contends that this billing was the result of a clerical error. As of the date of the motions for summary judgment, the Monarch Policy remains in full force and effect. The plaintiff has repeatedly demanded that Berkshire pay his benefits under each of the Berkshire policies along with a refund and waiver of his premiums during his disability. Berkshire claims that on June 11, 1999, the plaintiff was tendered a refund of all premiums paid on Policies A, B, C and D, net of benefits paid.

Berkshire has written Issue and Participation Limits as part of its Product Manual which it contends governs its underwriter's authority to underwrite disability income policies. The plaintiff maintains that the Product Manual does not govern the underwriter's authority, but only acts as a guideline. Berkshire claims that based upon the criteria set forth in its Issue and Participation, between January 29, 1992 and March 2, 1992, the plaintiff qualified for a total maximum monthly disability income benefit of $14,400 from all

carriers. In addition, Berkshire argues that if the plaintiff had not agreed to drop the Monarch Policy, the combined monthly disability coverage on the plaintiff would have been $27,770, which would have exceeded Berkshire's Issue and Participation Limits by $13,370. The plaintiff disputes both the "qualification" guidelines as alleged by the defendant as well as the total maximum monthly disability benefits as calculated by the defendant.

Berkshire claims that it issued the policies in reliance on the promise and the condition that the plaintiff would terminate the Monarch Policy, and had it known that the plaintiff would accept Monarch's offer to "continue" its disability coverage, it would not have issued any of the policies. The plaintiff refutes this contention by Berkshire and argues that he had not made a "promise" to terminate the Monarch Policy nor was it a "condition" that he not obtain a separate other policy of disability insurance.

The plaintiff's counter-statement in opposition to defendant's amended and supplemental Rule 56.1 statement concludes that:

> there are material issues of fact relevant to defendant's intended motion, which must be determined by a trier of fact, as to whether (i) Dr. Raifman failed to satisfy any purported 'condition' (which is disputed) alleged by the defendant; (ii) the alleged breach of a promise to drop other coverage (which is disputed) is of such a material nature so as to justify the drastic remedy of recession of the policies; and (iii) Defendant's 'Participation and Issue Limits' governed Mr. Pecon's authority to approve of Dr. Raifman's insurance.

It should be noted that despite Local Civil Rule 56.1(b)'s admonition that "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried," the defendant's response to the plaintiff's Rule 56.1 statement did not include such a statement.

## II. DISCUSSION

### A. *Summary Judgment Standard*

A court may grant summary judgment "only if the pleadings and evidentiary submissions demonstrate the absence of any genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Tasini v. New York Times Co.*, 192 F.3d 356, 360 (2d Cir.1999); *see also Hunt v. Cromartie*, 526 U.S. 541, 119 S.Ct. 1545, 1550, 143 L.Ed.2d 731 (1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 [1986]; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 [1986] ); *Turner v. General Motors Acceptance Corp.*, 180 F.3d 451, 453 [2d Cir.1999]; Fed.R.Civ.P. 56[c]. In this determination, the Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998); *Twin Lab., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir.1990); *Tasini*, 192 F.3d at 360.

According to the Second Circuit, "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United National Ins. Co. v. The Tunnel, Inc.*, 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *Fagan v. New York State Elec. & Gas Corp.*, 186 F.3d 127, 132 (2d Cir.1999); *West–Fair Elec. Contractors v. Aetna Cas. & Surety Co.*, 78 F.3d 61, 63 (2d Cir.1996); *see also Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56[e] ). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the

nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505.

However, mere conclusory allegations, speculation, or conjecture will not avail a party resisting summary judgment. *Kulak v. City of New York,* 88 F.3d 63, 70 (2d Cir.1996). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 129 (2d Cir.1996), *cert. denied,* 520 U.S. 1228, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991); *Grain Traders, Inc. v. Citibank, N.A.,* 160 F.3d 97, 100 (2d Cir.1998). Finally, the Court is charged with the function of "issue finding," not "issue resolution." *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1224 (2d Cir.1994).

It is within this framework that the Court addresses the present motion for summary judgment.

B. *Berkshire's Motion for Summary Judgment*

Berkshire moves for summary judgment seeking dismissal of the plaintiff's complaint and a Court order rescinding Polices A, B, C and D. In support of its motion, Berkshire contends that because the plaintiff accepted an offer from Monarch to continue in force a disability insurance policy which he had expressly agreed to drop, it should be entitled to rescind the policies.

Many of the "undisputed facts" contained within the defendant's memorandum of law in support of its motion for summary judgment were not contained in its Rule 56.1 statement of uncontested material facts. For example, neither the testimony nor the significance of the plaintiff's insurance broker, Benjamin Kaplan, was included in the Rule 56.1 statement. The defendant relies upon this testimony in its memorandum to show that (1) the plaintiff wanted to replace his Monarch policies with identical coverage from another carrier; and (2) that the plaintiff

understood that upon the issuance of replacement coverage by Berkshire, he was obligated to drop his corresponding coverage. While the defendant cites to portions of Kaplan and the plaintiff's depositions, these two factual assertions are in dispute. As such, for purposes of this motion, the Court will only rely on material facts that are not disputed; namely, Policies A, B, C and D and the facts in the Rule 56.1 statements that are uncontested.

■ This case is essentially one of contract interpretation. *See e.g., Kimmins Indus. Serv. Corp. v. Reliance Ins. Co.,* 19 F.3d 78, 81 (2d Cir.1994) (applying contract principles to interpret an insurance policy). There can be no dispute that under New York law, an insurance policy is a contract which, like any other contract, must be construed to effectuate the parties' intent as expressed by their words and purposes. *See Jakobson Shipyard, Inc. v. Aetna Cas. and Sur. Co.,* 961 F.2d 387, 389 (2d Cir.1992). An insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract. *Village of Sylvan Beach v. Travelers Indem. Co.,* 55 F.3d 114, 115 (2d Cir.1995). An insurance policy will be read as a whole in order to determine whether an ambiguity exists, and a policy should be read so that no provision is rendered meaningless. *County of Columbia v. Continental Ins. Co.,* 83 N.Y.2d 618, 628, 612 N.Y.S.2d 345, 349, 634 N.E.2d 946 (1994). "When interpreting the meaning of a contract, it is the objective intent of the parties that controls.... The secret or subjective intent of the parties is irrelevant." *Klos v. Polskie Linie Lotnicze,* 133 F.3d 164, 168 (2d Cir.1997) (citations omitted). With regard to insurance contracts, the New York Court of Appeals has stated that:

> Insurance contracts, above all others, should be clear and explicit in their terms. They should not be couched in language as to the construction of which lawyers and courts may honestly differ.

In a word, they should be so plain and unambiguous that men [and women] of average intelligence who invest in these contracts may know and understand their meaning and import.... To sustain the construction urged, the insurer has the burden of establishing that the words and expressions used not only are susceptible of that construction but that it is the only construction that can fairly be placed thereon.

*Bronx Savings Bank v. Weigandt,* 1 N.Y.2d 545, 551, 154 N.Y.S.2d 878, 136 N.E.2d 848 (1956) (citations omitted). In other words, "if the provisions are clear and unambiguous, courts are to enforce them as written." *Sylvan Beach,* 55 F.3d at 115 (citing *Maurice Goldman & Sons, Inc. v. Hanover Ins. Co.,* 80 N.Y.2d 986, 987, 592 N.Y.S.2d 645, 646, 607 N.E.2d 792 (1992)); *see also Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir. 1990) ("When the terms of an insurance policy are clear and unambiguous, they must be accorded their ordinary meaning") (applying Connecticut law). However, in insurance cases, if the policy language is ambiguous, the ambiguity must be interpreted in favor of the insured. *Sylvan Beach,* 55 F.3d at 115.

Applying these standards, the Court must look at the language of Policies A, B, C and D to determine whether the defendant is entitled, as a matter of law, to rescind the disability insurance policies due to the uncontroverted fact that the plaintiff reinstated or continued his disability insurance policy with Monarch. Berkshire highlights four separate questions in the disability insurance application to support its contention that it is entitled to an order directing judicial recission. As set forth above, question number 12 of the application contained a handwritten chart where the plaintiff indicated that his four existing policies would be terminated upon issue of an identical Berkshire policy. In response to question number 13, the plaintiff represented that "Issuance of Berkshire policies in the amounts requested with benefits so designated will cause Dr. Raifman to drop corresponding coverage with Monarch and UNUM." In addition, in response to question numbers 21(d) and 22(b) of the Application, the plaintiff answered "YES" to inquiries concerning his intent to terminate existing overhead expense and disability buy-out policies.

■ Other than the application provisions mentioned above, the disability insurance policies themselves do not state whether the insured must terminate any existing insurance policies. While the Application is part of the policy, there is nothing in the defendant's pre-printed policy which addresses this subject. The polices do not mention what, if anything, the insurer is entitled to do should the insured obtain another disability or overhead insurance policy. In addition, the application does not state that the insured is barred from reinstating his insurance policy with Monarch after terminating the policy. The policies in question do no indicate that the permanent termination of the existing policies is a condition, promise or covenant of continuing coverage by Berkshire. In other words, neither the policies of insurance nor the applications in question indicate that there is any condition, promise or covenant either (i) prohibiting the plaintiff from procuring Monarch insurance more than a year after he applied for the defendant's insurance; or (ii) specifying that if he did, the defendant's insurance policies could be rescinded.

Berkshire contends that the plaintiff understood that upon the issuance of replacement coverage, he was obligated to forever drop his corresponding coverages. In addition, Berkshire claims that it relied on the plaintiff's representations that he would terminate his existing policies. In this regard, Berkshire argues that the revival of the Monarch policy caused the plaintiff to become substantially overinsured. Finally, Berkshire submits that it would not have issued the policies had it known that the plaintiff would cause the Monarch policy to be revived. These facts

are disputed by the plaintiff and thus constitute material issues of fact that warrant denial of the defendant's motion for summary judgment.

As stated above, in deciding a motion for summary judgment, the Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the non-moving party. The Court is unable to find, as a matter of law, that when the plaintiff reinstated his insurance with Monarch he breached the terms of Policies A, B, C and D and that as a result, Berkshire is entitled to recission. The disability insurance policies do not appear to be clear and unambiguous as to whether Berkshire has a right to rescind the insurance policies because of the plaintiff's decision to re-commence his policy with Monarch. Accordingly, the Court denies the defendant's motion for summary judgment seeking judicial recission of Polices A, B, C and D.

The defendant also moves to bar the plaintiff's claim for payment of disability benefits due after the commencement of the lawsuit and to prohibit the plaintiff from seeking punitive damages and attorneys' fees. These separate "motions" were not part of the pre-motion letter seeking a conference with the Court or raised in the pre-motion conference. In addition, the factual assertions underlying these separate "motions" were not mentioned in the respective Rule 56.1 statements. Moreover, discovery on these issues have not been completed. A such, these motions are denied, with leave to renew at the appropriate time at trial. However, the Court notes that it seems unlikely that the plaintiff would be entitled to punitive damages or attorneys' fees. *see Rocanova v. Equitable Life Assur. Socy. of U.S.*, 83 N.Y.2d 603, 613, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994) (holding that claims for punitive damages are an extraordinary remedy and should be dismissed where the plaintiff fails to present "sufficient evidentiary allegations of ultimate fact of a fraudulent and deceitful scheme in dealing with

the general public [or] to imply a criminal indifference to civil obligations."); *see also Bread Chalet, Inc. v. Royal Insurance Co.*, 224 A.D.2d 650, 639 N.Y.S.2d 73 (2d Dep't 1996).

### C. Raifman's Motion for Summary Judgment

■ The plaintiff moves for summary judgment seeking dismissal of the defendant's "fourth affirmative defense," "sixth affirmative defense and first counterclaim," and "seventh affirmative defense and second counterclaim," which seek to rescind his disability income and overhead expense insurance policies. In support of his motion, the plaintiff claims that Berkshire waived any right to rescind the policies by continuing to accept premiums for these policies for more than one year after learning the purported grounds upon which it now seeks to rescind. In addition, the plaintiff argues that the affirmative defenses and counterclaims seeking recission of the policies should be dismissed as each of the policies contain an incontestability clause barring the defendant from contesting the policy based on the statements made in the insurance application.

For purposes of this motion, the Court is not persuaded that Berkshire's acceptance of the plaintiff's premiums constitutes a waiver of its right to rescind the disability insurance premiums. "Waiver involves 'intentional relinquishment of a known right and must contain both knowledge of its existence' as well as the 'intention to relinquish it.'" *Banque Arabe Et Internationale D'Investissement v. Maryland N'tl. Bank*, 850 F.Supp. 1199, 1212 (S.D.N.Y.1994) (citation omitted). Berkshire argues that it never voluntarily and intentionally relinquished its right to rescind the Policies. Berkshire contends that a clerical error was committed when its computer continued to generate quarterly premium bills to the plaintiff in November 1998, February 1999 and June 1999, despite its knowledge that the plaintiff had re-instated his Monarch disability

insurance. Whether Berkshire's continued billing and receiving of payments from the plaintiff constitutes an intentional relinquishment of a known right or privilege is a question that is not appropriate for decision in the context of this motion for summary judgment. The Court cannot determine, as a matter of law, whether Berkshire's billing and receipt of the plaintiff's quarterly payments was truly inadvertent and lacked the requisite intent to constitute a waiver. This issue may ultimately be a question for the jury.

■ Similarly, whether Berkshire's claim for rescission is barred by the incontestability clause cannot be resolved by a motion for summary judgment. The New York court of Appeals, in *Simpson v. Phoenix Mutual Life Ins. Co.* 24 N.Y.2d 262, 267, 299 N.Y.S.2d 835, 840, 247 N.E.2d 655 (1969), stated that "if the additional risk to the insurer of issuing a policy to a particular applicant could have been discovered at the time the contract was entered into, the insurer is precluded from raising the fact as a defense after the period provided for in the incontestable clause has elapsed."

Berkshire argues that no basis exists to apply the incontestability clause. Berkshire's principal argument is that because it could not have discovered that the plaintiff had reactivated the Monarch policy at the time it issued its Policies, the incontestability clause is inapplicable. In other words, Berskshire maintains that it would not have been possible to detect the plaintiff's alleged misrepresentation during the two year contestability period because he did not reinstate the Monarch disability insurance policies until a year and a half after the application. For purposes of this motion only, the Court agrees and finds that given the short investigation period, the incontestability clause cannot be read to apply where the grounds for recission were non-existent at the time the Policies were issued and where the plaintiff did not obtain other insurance from Monarch until

almost a year and a half after the issuance of the Berkshire policies.

## III. CONCLUSION

Having reviewed the parties' submissions, and for the reasons set forth above, it is hereby

**ORDERED,** that Berkshire's motion for summary judgment seeking dismissal of Raifman's complaint and an order rescinding Polices A, B, C and D is **DENIED;** and it is further

**ORDERED,** that Berkshire's motion seeking to bar Raifman's claim for payment of disability benefits due after the commencement of the lawsuit and to prohibit Raifman from seeking punitive damages and attorneys' fees is **DENIED,** with leave to renew at the trial; and it is further

**ORDERED,** that Raifman's motion for summary judgment seeking dismissal of Berkshire's defenses and counterclaims which claim a right to rescind the disability income and overhead expense insurance policies is **DENIED;** and it is further

**ORDERED,** that any remaining discovery is to be completed by March 11, 2000; and it is further

**ORDERED,** that the parties are directed to appear for jury selection on April 10, 2000 at 9:00 AM.

**SO ORDERED.**